IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | 07-CR-107 (PLF) |
| v. ) | Judge Paul L. Friedman |
| ) | |
| MICHAEL C. IRVING ) | |

**DEFENDANT'S MOTION FOR A COURT ORDER
TO DISCLOSE TAX RETURN INFORMATION OF SPECIFIC INDIVIDUALS**

The Defendant, Michael C. Irving hereby moves this Court to issue an Order to the Internal Revenue Service to disclose tax information related to certain specific taxpayers identified below. The reasons supporting this motion are set forth below.

**I.     BACKGROUND**

The Defendant, Michael C. Irving, was charged by indictment with nine criminal counts: (1) Two counts of making a false claim for a refund in violation of 18 U.S.C. §287, (2) Three counts of attempting to evade federal income tax in violation of 26 U.S.C. 7201, (3) One count of fraud in violation of 22 D.C. Code § 3221(a), and (4) Three counts of evading District of Columbia income taxes in violation of 47 D.C. Code §410(a).  All the charges grow out of the Government's allegation that for several years, from 2003 through 2005, Mr. Irving intentionally failed to file tax returns and did not pay federal and District income taxes during those years. Mr. Irving is charged with violations of both the federal and the District of Columbia tax code.

At issue in this case is Mr. Irving's intent. Mr. Irving did not file his tax returns and did not pay taxes for the years in question because he was acting under a subjective belief that he was not required to do so. In lieu of filing his tax returns, Mr. Irving filed certain documentation with

the IRS indicating that he was following a line of argument that the IRS has generally classified as constituting a "tax protester." Mr. Irving was acting under the good faith belief that various individuals in the United States and corporations and trusts had found a *legitimate* way to avoid paying taxes. Mr. Irving was first exposed to this idea by another Metropolitan Police Department Detective, Eugene Lonon. Mr. Lonon was killed in an automobile accident in April 2003. The defense also has good reason to believe that Mr. Lonon told other police officers about the concept of being a "tax protester" and that these other officers, following Mr. Lonon's guidance, did precisely what Mr. Irving is alleged to have done, namely, submit documentation to the authorities announcing their tax exempt status and failing to file tax returns or pay taxes.

In correspondence to the Government dated June 11, 2007, counsel for Mr. Irving made several specific demands for information that we believe must be disclosed under *Brady v. Maryland*, 373 US. 83 (1973) and its progeny. In particular, defense counsel made the following requests:

1. *A specific Brady demand for the identities, names and addresses, and statements (in whatever form) of any and all persons, whether or not those persons are cooperating with the government, who failed to file tax returns or asserted a "tax protester" status based on information provided to them by Gene Lonon, or persons associated with Mr. Lonon. It is our belief that there are a number of police officers and other persons that acted on Mr. Lonon's advice in this regard. It is the responsibility of the Government to discover who those persons are and provide the defense with information related to their conduct, since their conduct may be material to the defense of Mr. Irving;*

2. *A specific Brady demand for the identities, names and addresses, and statements (in whatever form) of any and all persons, whether or not those persons are cooperating with the government, who filed a W-4T Form and/or a W-4 Form indicating that they were "exempt" from withholding with the D.C. Metropolitan Police Department from 2000 through present;*

3. *A specific Brady demand for the all filings or correspondence made by Gene Lonon or correspondence between the IRS and Gene Lonon from 1996 though 2004; and*

> *4. A specific Brady demand for information relating to the identities, names, and addresses and statements (in whatever form) of any and all persons who were involved in preparing the documents used by the Defendant in the alleged scheme, including persons who prepared, edited, reviewed, printed, or transported the documents that were made by the Defendant.*

In partial response, the Government indicated that it could not disclose any taxpayer information without a Court Order under the general proscription of 26 U.S.C. §6301(a). More recently, the defense requested that the Government consent to a court order that would disclose the taxpayer information related to five individuals:

    (1)    Eugene Lonon

    (2)    Darryl B. Richmond

    (3)    Jemelle Green

    (4)    Michael Muhammad

    (5)    Stephen August Harris

The Government has indicated that it will oppose our request for such an Order. Consequently, Mr. Irving files the present motion for a Court Order that would compel the IRS to disclose this information to the defense.

## II.    <u>LEGAL ARGUMENT</u>

In the seminal Supreme Court case of *Cheek v. United States*, 498 U.S. 192 (1991), the Supreme Court held that if a jury finds that a criminal defendant had a subjective good faith belief due to a misunderstanding based on the complexity of the tax law, that belief may be a defense with respect to the element of willfulness, even if the belief is unreasonable. Thus, the primary issue at trial is to examine Mr. Irving's subjective understanding (or misunderstanding) of the tax laws and regulations. Mr. Irving fell victim to a group of people who distributed tax protester

materials and prepared tax forms as a way to make money off naïve taxpayers and honestly believed that he was not violating any tax laws.

> Tax protesters, or individuals who claim that they are not legally required to pay taxes, have been around for a long time. In recent years, however, the number of tax protesters appears to have increased as numerous individuals and groups actively market and sell a variety of materials supporting the claim that American citizens are not obligated to pay income taxes.
> Among the arguments raised by tax protester are: (1) that the 16th Amendment to the Constitution, which authorizes income taxes, was never ratified; (2) that the Internal Revenue Service (IRS) was never properly established by Congress and is an illegal entity; (3) that the Internal Revenue Code (IRC) was not properly enacted; (4) that "income" is not defined or does not include wages, tips, or other compensation; and (5) that only foreigners and citizens of U.S. territories (such as Puerto Rico and Guam) and Washington, D.C. are obligated to pay taxes. Despite the fact that a majority of the population may classify these arguments and their proponents as outlandish and incredible, many people are citing these assorted theories as reasons not to pay taxes.

John J. Tigue and Jeremy H. Tempkin, *Revenge of the Tax Protesters*, New York Law Journal, Vol 234, No. 52 (September 14, 2005). Most of these theories found their way into the affidavit that Detective Irving filed with his W-4 and D-4 tax forms.

In this case, the evidence will show that Detective Irving first learned of the "tax exempt" concept from his close friend and colleague, Eugene Lonon, who at the time was also a police detective. Based upon information that we have gathered in the course of the defense investigation, we have reason to believe that several other police officers filed documents with the IRS similar or identical to those filed by Detective Irving and claimed status as "e*xempt*" from withholding. We also believe that they did so based upon advice and information provided to them by Mr. Lonon. The records of these persons will substantiate the testimony of Detective Irving and provide information verifying the reasons why Detective Irving believed that his actions were legal, namely, that other law enforcement officers were doing the same thing and also believed that they were complying with the law. For this reason, the defense has asked the

Government to disclose the tax return information as well as any other correspondence with the IRS for Mr. Lonon and the other persons identified above. This information is critical to the defense in this case because, to the extent it exists, it corroborates Mr. Irving's claim that he acted on information provided to him by Mr. Lonon and that others acted on the same information.

Similarly, while Stephen A. Harris[1] was not an employee of the Metropolitan Police Department, he provided the tax protester documents to Detective Irving. Mr. Harris' personal tax information is extremely relevant because it should corroborate Detective Irving's position that he was misled by a person who purported to have substantial knowledge about taxes and who provided the necessary documents to Detective Irving. Without access to Mr. Harris' tax return information, we believe Mr. Harris will deny any involvement with the Defendant and the Defendant will be unable to impeach that denial. Upon information and belief, Mr. Harris prepared tax returns for other persons who claimed "exempt" status. He was knowledgeable about the multiple "tax protester" arguments and he charged people to provide misguided tax advice, to prepare misguided claims for refund, and to provide rebuttal correspondence to the IRS. The Government should have substantial information regarding Mr. Harris' protest activities and that information is vital to substantiating Detective Irving's position in this case.

Based on the foregoing, the requested records are clearly "favorable to the accused" and constitutes so-called *Brady* information, which the Government must disclose to the defendant. *Brady v. Maryland*, 373 U.S. 83 (1973). This information is also material to the preparation of the defense under Fed. R. Crim. P. 16(a)(1)(C). The Government, however, has declined to provide this information to the defense, claiming that with respect to any returns and taxpayer return information, "[d]isclosure is prohibited by 26 U.S.C. §6103, in the absence of a Court

5

Order." By way of this motion, we ask that the Court compel the Government to discover and disclose the information requested.

As a general rule, the Internal Revenue Code (IRC) provides that "Returns and return information shall be confidential" and strictly prohibits government employees from disclosing "any return or return information." 26 U.S.C. §6103(a); *see also, Snider v. United States*, 468 F.3d 500 (8th Cir. 2006). There are, of course, a number of enumerated exceptions to this prohibition. Most significantly in this case, 26 U.S.C. §6103(i)(4)(A)(ii) provides that "any return or taxpayer return information . . . may be disclosed in any judicial or administrative proceeding pertaining to enforcement of a specifically designated Federal criminal statute . . . to which the United States or a Federal agency is a party . . . to the extent required by order of the court pursuant to section 3500 of title 18, United States Code, or rule 16 of the Federal Rules of Criminal Procedure." This provision of the IRC gives this Court the power to order the disclosure of returns and taxpayer return information when such information constitutes material favorable to the defense.

That conclusion is supported squarely by the D.C. Circuit's opinions in *United States v. Lloyd*, 992 F.2d 348 (D.C. Cir. 1993) and *United States v. Lloyd*, 71 F.3d 408 (D.C. Cir. 1995). In *Lloyd*, a criminal tax case, the defendant, a tax preparer, was accused of assisting taxpayers in filing false tax returns. Before trial:

> Lloyd sought pre-trial discovery of tax returns for his clients named in the indictment for the three years preceding the years of the returns which Lloyd had prepared. The government obtained some of the requested prior returns, but determined that 26 U.S.C. § 6103 (1988) prohibited disclosing the tax returns without a court order. Lloyd requested such an order, arguing that if the earlier tax returns revealed that the clients had filed fraudulent returns in the past, it would support his defense that the clients themselves, and not Lloyd, supplied the false

---

[1]   Counsel for the Defendant will provide additional identification information to the Government concerning Stephen A.. Harris, if the Government needs such information before turning over its records concerning Mr. Harris' taxes and tax related activities.

6

>information in the indictment returns.  The court refused to issue the order, concluding that Lloyd had failed to meet his burden of showing that the returns would be useful in his defense.

71 F.3d at 409.  In *Lloyd*, the Court was evaluating whether the taxpayer return information should be produced under Fed. R. Crim P. 16(a)(1)(C), which requires the government to disclose to any information that is material to the preparation of the defense.  The Court stated:

>This materiality standard normally "is not a heavy burden," [citations omitted]; rather, evidence is material as long as there is a strong indication that it will "play an important role in uncovering admissible evidence, aiding witness preparation, corroborating testimony, or assisting impeachment or rebuttal.

992 F.2d at 351.  In evaluating the trial court's refusal to issue an order disclosing the tax returns and taxpayer information, the D.C. Circuit applied the well-established and somewhat restrictive standard set forth by the Supreme Court in *United States v. Bagley*, 473 U.S. 667, 682 (1985), namely, that the undisclosed information is material if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.  After a lengthy analysis, the Court concluded that the undisclosed returns and taxpayer information was material on two counts of conviction and reversed those convictions.

   For the reasons set forth above, the returns and taxpayer information related to the five specific individuals identified in this motion, and potentially other persons that may be known to the Government, are "material" to Detective Irving's defense in this case because they directly corroborate the basis for his good-faith, even if subjective, belief that he was not violating the tax laws.  Consequently, he is entitled to that information under *Brady* and its progeny.

7

WHEREFORE, the Defendant respectfully requests that this Court issue an Order that would compel the IRS and the Government to disclose the specific taxpayer returns and information set forth above.

                                            Respectfully submitted,

                                            SCHERTLER & ONORATO, LLP

                                                        /s/
                                          David Schertler (DC Bar #367203)
                                          David Dickieson (DC Bar #321778)
                                          601 Pennsylvania Avenue, NW
                                          North Building, 9th Floor
                                          Washington, DC 20004
                                          Telephone: (202) 628-4199
                                          Facsimile: (202) 628-4177