IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | 07-CR-107 (PLF) |
| v. ) | Judge Paul L. Friedman |
| ) | |
| MICHAEL C. IRVING ) | |

**DEFENDANT'S REPLY TO GOVERNMENT'S CONSOLIDATED
REPLY TO DEFENDANT'S PRE-TRIAL MOTIONS TO COMPEL**

The Defendant, Michael C. Irving hereby submits this reply to the Government's opposition to the Defendant's motions to compel the disclosure of certain discovery information.

**I.   BACKGROUND**

In three separate motions to compel, Mr. Irving has requested that this Court order the Government to disclose three separate categories of information. First, Mr. Irving asks this Court to issue an order pursuant to 26 U.S.C. §6103 disclosing the tax return information and IRS correspondence of five persons on the basis that such information constitutes *Brady* material. Second, Mr. Irving requested that the Government disclose the grand jury testimony of Darryl Richmond, who has testified in the grand jury that he also failed to file tax returns based upon the same information from Detective Eugene Lonon upon which Mr. Irving relied. Third, Mr. Irving has asked that the Government disclose all information in the possession of the District of Columbia Metropolitan Police Department regarding tax-exempt forms submitted by other police officers since 2000. In its "Reply" to the motions, the Government has opposed all three requests. As we demonstrate below, the Government's analysis is incorrect.

As the Court knows, the issue in this case is Mr. Irving's intent. In the seminal Supreme Court case of *Cheek v. United States*, 498 U.S. 192 (1991), the Supreme Court held that if a jury finds that a criminal defendant had a subjective good faith belief due to a misunderstanding based on the complexity of the tax law, that belief may be a defense with respect to the element of willfulness, even if the belief is unreasonable. Mr. Irving did not file his tax returns and did not pay taxes for the years in question because he was acting under a good faith subjective belief that he was not required to do so and that he was not violating any criminal laws. In *lieu* of filing his tax returns, Mr. Irving filed certain documentation with the IRS indicating that he was following a line of argument that the IRS has generally classified as constituting a "tax protester." Again, Mr. Irving was acting under the good faith belief that he was not violating the tax laws. His belief stemmed from advice given to him by another Metropolitan Police Department Detective, Eugene Lonon and Mr. Lonon's associate, Stephen Harris. Mr. Lonon was killed in an automobile accident in April 2003. The defense is aware that Mr. Lonon told other police officers about the concept of being a "tax exempt" and that these other officers, following Mr. Lonon's guidance, did precisely what Mr. Irving is alleged to have done, namely, submit extensive documentation to the authorities announcing their tax exempt status.

In our motions to compel, we believe that the Government is in possession of information or has access to information that would corroborate Mr. Irving's defense and which, therefore, is both material to the preparation of the defense under Fed. R. Crim. P. 16 and favorable to the defense under *Brady v. Maryland*, 373 U.S. 83 (1963) and its progeny.

## II. THE GOVERNMENT'S DEFINITION OF BRADY INFORMATION IS IMPERMISSIBLY NARROW.

First, as a general matter, the Government's definition of *Brady*[1] information as set out in its Reply is wrong in that it is impermissibly narrow. The Government takes the incorrect view that *Brady* information has to be "exculpatory" evidence. In several recent opinions, this Court has addressed at length the proper definition and scope of information covered by *Brady*. For instance, in *United States v. Safavian*, 233 F.R.D. 12 (D.D.C. 2005), this Court stated:

> The only question before (and even during) trial is whether the evidence at issue may be favorable to the accused: if so, it must be disclosed without regard to whether the failure to disclose it likely would affect the outcome of the upcoming trial.
>
> \* \* \* \* \*
>
> The meaning of the term "favorable" under *Brady* is not difficult to discern. It is any information in the possession of the government – broadly defined to include all Executive Branch agencies – that relates to guilt or punishment and that tends to help the defense by either bolstering the defense case or impeaching potential prosecution witnesses.
>
> \* \* \* \* \*
>
> Where doubt exists as to the usefulness of the evidence as to the defendant, the government must resolve all such doubts in favor of full disclosure.

*Id*. at 17 (citations omitted.)    These general principles of what constitutes Brady information apply to a wide array and variety of information that can be favorable to the defense.

---

[1] *Brady v. Maryland*, 373 U.S. 83 (1963).

### III. THE SPECIFIC REQUESTS FOR INFORMATION MADE BY THE DEFENSE CONSTITUTE BRADY INFORMATION AND SHOULD BE DISCLOSED.

#### A. THE REQUEST FOR THE IRS CORRESPONDENCE AND TAX RETURNS OF EUGENE LONON, STEPHEN HARRIS, JAMELLE GREEN AND MICHAEL MUHAMMAD CONSTITUTE INFORMATION THAT WOULD CORROBORATE MR. IRVING'S DEFENSE.

The defense has requested that the Government consent to a court order that would disclose the taxpayer information related to five individuals:

(1) Eugene Lonon;

(2) Darryl B. Richmond;

(3) Jemelle Green;

(4) Michael Muhammad; and

(5) Stephen August Harris.

These five individuals are persons known to the defense to have taken the same position as Mr. Irving with the IRS as "tax exempt." Detective Irving first learned of the "tax exempt" concept from his close friend and colleague, Eugene Lonon, who at the time was also a police detective. Based upon information that we have gathered in the course of the defense investigation, we have reason to believe that several other police officers, including Detectives Darryl Richmond, Jamelle Green, and Michael Muhammad filed documents with the IRS similar or identical to those filed by Detective Irving and claimed status as "*exempt*" from withholding, and that they did so based upon advice and information provided to them by Mr. Lonon.

The records of these persons will substantiate the testimony of Detective Irving and provide information verifying the reasons why Detective Irving believed that his actions were legal, namely, that other law enforcement officers were doing the same thing and also believed that they were complying with the law. For this reason, the defense has asked the Government to disclose the tax return information as well as any other correspondence with the IRS for Mr.

Lonon and the other persons identified above. This information is critical to the defense in this case because, to the extent it exists, it corroborates Mr. Irving's claim that he acted on information provided to him by Mr. Lonon and that others in Mr. Irving's position acted on the same information.

Similarly, Stephen A. Harris provided the documents to Detective Irving, which was intended to make Detective Irving tax-exempt. Mr. Harris' personal tax information is extremely relevant because it will corroborate Detective Irving's position that he was misled by a person who purported to have substantial knowledge about taxes and who provided the necessary documents to Detective Irving. Without access to Mr. Harris' tax return information, we believe Mr. Harris will deny any involvement with the Defendant and the Defendant will be unable to impeach that denial. Upon information and belief, Mr. Harris prepared tax returns for other persons who claimed "exempt" status. He was knowledgeable about the multiple "tax protester" arguments and he charged people to provide misguided tax advice, to prepare misguided claims for refund, and to provide rebuttal correspondence to the IRS. The Government should have substantial information regarding Mr. Harris' activities and that information is vital to substantiating Detective Irving's position in this case.

The Government objects to a court order disclosing this information arguing that "[t]he bare assertion that others may be engaged in conduct similar to that of the defendant, without more, and [sic] is in no way material or exculpatory to defendant and does not constitute *Brady*." We disagree. The tax information we specify above is far more than a bare assertion that it is conduct similar to that of the defendant. If that were the standard, the defense could request information related to all tax protesters. That is not what we do here. We identify tax

5

information related to specific persons who had interaction with Mr. Irving and whose actions will directly corroborate his defense of the case.

In addition, the Government, in its Reply, seems to imply that because the good faith defense in this case will rest on Mr. Irving's subjective good faith belief that he was not violating the tax laws, that the only evidence Mr. Irving can present is his own testimony. This position flies in the face of well-established principles of evidence that allow a defendant to introduce a panoply of evidence that serves to corroborate both the defendant's testimony as well as the defense theory of the case.

Specifically, in this case, Mr. Irving would contend that he was advised of the concept of being tax exempt Mr. Lonon. Mr. Lonon told Mr. Irving that he (Mr. Lonon) had been tax exempt for years without anyone challenging him. Mr. Lonon also introduced Mr. Irving to Stephen Harris, who also represented to Mr. Irving that he (Mr. Harris) had been doing the same thing and who prepared forms and documents for Mr. Irving to file with the IRS.

Here, the tax information we seek clearly has the potential to corroborate Mr. Irving's defense for the following reasons. While Mr. Irving may well testify to his subjective good faith beliefs, he certainly is entitled to introduce evidence that would corroborate those beliefs, explain how he acquired those beliefs and substantiate his reasons for deciding those beliefs were well-founded. The mere fact that Mr. Lonon and Mr. Harris filed tax exempt material with the IRS and the fact that they did not file tax returns or pay their taxes provides compelling corroboration for Mr. Irving's contention that he learned of the tax exempt concept from these individuals. The fact that these individuals did not pay taxes or files returns for years without any apparent prosecution provides equally compelling corroboration for Mr. Irving's subjective belief that there was

nothing illegal about doing so.  Mr. Irving should be permitted to introduce such evidence to the jury to corroborate his good faith subjective belief

The fact that several other police officers were doing the same thing as Mr. Irving based upon the advice they received from Mr. Lonon provides additional corroboration for Mr. Irving's contention that he received such advice from Mr. Lonon.  However, it also corroborates Mr. Irving's subjective good faith belief that he was not violating the law since he was aware of the fact that other police officers were engaging in the same conduct with no apparent adverse ramifications to their conduct.

Irrespective of Mr. Irving's subjective intent, the fact that other persons around him engaged in the same type of activity and, like him, believed that they were not violating the law provides evidence of some degree of "reasonableness" in Mr. Irving's belief, namely that other persons were doing the same thing and no one was being charged with crimes or put under investigation.  This measure of reasonableness is relevant evidence that the jury should be able to consider in deciding whether Mr. Irving was acting in good faith.  The tax information and returns of these individuals clearly "bolsters the defense case."

Finally, we submit that the disclosure of this information may lead to other investigative leads that could prove favorable to the defense.  It may also assist the defense in interviewing witnesses to learn if they have admissible evidence favorable to the defense or could lead the defense to other avenues of investigation that would support Mr. Irving's good faith defense.

As this Court said in *Safavian*, the "only question before the court is whether the evidence at issue may be favorable to the accused."  If so, it must be disclosed.  With respect to the tax information of the five individuals identified by the defense, we have made that threshold showing.  The information we seek clearly may be favorable to the defense and it should be

7

disclosed, regardless of whether it ultimately results in admissible evidence or whether the court allows us to use it at trial

While the Government has noted that such tax information can only be disclosed pursuant to a court order, in its Reply, even the Government concedes that this Court has the authority to issue an order disclosing the tax information Mr. Irving requests "based upon a finding by the Court that the relevant information constitutes exculpatory evidence [quoting *Brady v. Maryland*]." (Government Reply at 5.) Once the Court determines that such information falls within the scope of *Brady* information or other discovery mandated in a criminal case, ***there is no other showing that the defendant need make to support a court order requiring disclosure of otherwise protected tax information.*** Consequently, once this Court determines that the tax information requested falls within the scope of *Brady*, the Court should issue an order requiring the IRS to disclose that information to the Department of Justice and the defendant.

Again, this conclusion is supported squarely by the D.C. Circuit's opinions in *United States v. Lloyd*, 992 F.2d 348 (D.C. Cir. 1993)("*Lloyd I*") and *United States v. Lloyd*, 71 F.3d 408 (D.C. Cir. 1995)("*Lloyd II*"). In *Lloyd I*, a criminal tax case, the defendant, a tax preparer, was accused of assisting taxpayers in filing false tax returns. In *Lloyd*, the Court was evaluating whether the taxpayer return information should be produced under Fed. R. Crim P. 16(a)(1)(C), which requires the government to disclose any information that is material to the preparation of the defense. The Court stated:

> This materiality standard normally "is not a heavy burden," [citations omitted]; rather, evidence is material as long as there is a strong indication that it will play an important role in uncovering admissible evidence, aiding witness preparation, corroborating testimony, or assisting impeachment or rebuttal.

992 F.2d at 351. In evaluating the trial court's refusal to issue an order disclosing the tax returns and taxpayer information, the D.C. Circuit applied the well-established and somewhat restrictive

8

standard set forth by the Supreme Court in *United States v. Bagley*, 473 U.S. 667, 682 (1985), namely, that the undisclosed information is material if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. After a lengthy analysis, the Court concluded that the undisclosed returns and taxpayer information were material on two counts of conviction and reversed those convictions.

In its Opposition, the Government makes an oblique reference that "[t]he Court of Appeals has acknowledged that there are contexts wherein the congressional policy demonstrated in section 6103, favoring confidentiality of tax returns and return information, ***may*** raise the materiality standard of Rule 16," citing *Lloyd I*, 992 F.2d at 352. (Government Reply at 8.) That misstates the holding in *Lloyd I*:

> There may be contexts in which §6103(h)(4)(D)'s reference to the "congressional policy favoring the confidentiality of returns" may take the form of raising Rule 16's materiality standard, but if so this is not one of them. Here the government claimed that the defendant caused false returns to be filed, and offered the testimony of the taxpayers to support its view that the falsity was the responsibility of the preparer. The taxpayers' interest in the confidentiality of otherwise material prior-year returns seems trivial in the circumstances. In this context, then, we understand §6103(h)(4)(D)'s injunction to consider confidentiality to be limited to such remedies as redacting portions that are plainly immaterial and especially sensitive.

*Lloyd I* at 352.

The same reasoning applies in this case. In a highly publicized prosecution that the Government hopes to use to set an example for others, the Government has charged Mr. Irving criminally for engaging in precisely the same type of conduct and filing the same information that we believe has been filed by the five persons that are the subjects of our request. Arguably, these five persons were also violating the law in filing the same kind of documentation with the IRS that Mr. Irving is alleged to have filed. As a result, their interest in confidentiality, as the D.C. Circuit stated, appears "trivial" in this case, especially in light of the compelling reasons why such

9

information is relevant and exculpatory to Mr. Irving. We would also note that in *Lloyd I*, the Court did not reach Lloyd's *Brady* argument for the same information. We would argue that the fact that the information in this case constitutes *Brady* information trumps any other countervailing consideration of confidentiality for tax returns. We would further argue that as a general matter, a defendant's constitutional right to information relevant to his defense in a criminal case overrides any taxpayer interest in confidentiality of returns.

For the reasons set forth above, the returns and taxpayer information related to the five specific individuals identified in this motion, and potentially other persons that may be known to the Government, are "material" to Detective Irving's defense in this case because they directly corroborate the basis for his good-faith, even if subjective, belief that he was not violating the tax laws. Consequently, he is entitled to that information under *Brady* and its progeny.

**B. THE GOVERNMENT SHOULD BE REQUIRED TO SEARCH FOR AND DISCLOSE ANY INFORMATION RELATED TO OTHER POLICE OFFICERS REQUESTING TAX-EXEMPT STATUS WITH THE METROPOLITAN POLICE DEPARTMENT.**

As we outlined above, Mr. Irving has made a request for the tax information of five individuals whom he was aware were engaging in the same conduct with respect to their taxes. Clearly, that information is directly relevant to Mr. Irving's state of mind.

Mr. Irving has also made a specific demand of the Government for "***the identities, names and addresses, and statements (in whatever form) of any and all persons, whether or not those persons are cooperating with the government, who filed a W-4T Form and/or a W-4 Form indicating that they were exempt from withholding with the D.C. Metropolitan Police Department from 2000 through present.***" We submit that to the extent it exists, this information is critical to the defense because, as we discuss above, it will assist the defense in discovering other persons who may corroborate Mr. Irving's claim that he acted on information provided to

10

him by Mr. Lonon; and that other police officers acted on the same information and corroborate Mr. Irving's good faith subjective belief that he was not violating any criminal tax laws.

Contrary to the Government's contention, this request is not a "fishing expedition." For the reasons set forth earlier in this motion (which we will not repeat here), such information could provide the defense with evidence that corroborates the defense theory of the case. The Government argues that because Mr. Irving was not aware of other police officers filing for tax-exempt status with MPD, it is "irrelevant to his then-existing state of mind; he can only testify as to what he knew or believed." (Government Reply at 2.) We disagree. Mr. Irving's defense can not be limited in this way. To the extent that others similarly situated to Mr. Irving were engaged in the same conduct, that evidence would support Mr. Irving's argument that his conduct was based not just on a subjective good faith belief, but that that belief was held by others and, thus, more reasonable in an objective sense, even if ultimately incorrect. This aspect of the defense goes to the heart of the Supreme Court's ruling in *Cheek, supra*, namely, that the tax laws are complex and can be innocently misconstrued by taxpayers. If other persons in Mr. Irving's situation misconstrued the tax laws in the same way as Mr. Irving, it would support his defense that his subjective belief was not so absurd or far-fetched as to be incredible.

Mr. Irving's argument in this respect is strikingly similar to that of the defendant in *Safavian, supra*, in which the defendant sought pre-trial discovery of certain email documents. In analyzing the relevance of those documents to the defense in *Safavian*, this Court stated:

> The Court does not agree with the government that these documents are only relevant if they relate to the defendant's state of mind when he communicated with various government officials. Rather, they could be "material" to the preparation of other defenses, a number of which are suggested in the defendant's filings in connection with this motion and have been alluded to in the hearings before the Court. . . ***Simply because the e-mails themselves were not sent to or received by Mr. Safavian and therefore do not directly reflect his state of mind, and may or may not be admissible in evidence at the trial, does not mean that they are not***

11

> *material to the preparation of a defense or that they will be unlikely to lead to admissible evidence.* To the contrary, e-mails between certain named associates of Mr. Abramoff with knowledge of the status of these projects or the Scotland trip may very well include information helpful to the defendant in finding witnesses or documents that would support his contention.

233 F.R.D. at 18 (emphasis added).

The same reasoning applies with equal force to Mr. Irving's request for information that he may not have been aware of at the time, but which may lead to other evidence that will corroborate his good faith belief that he was not violating the tax laws.

In its Opposition, the Government does not raise the argument that this material is not in its possession and therefore it cannot be responsible for disclosing it. We assume that the Government has abandoned this argument given the fact that this prosecution is a joint prosecution with the District of Columbia Office of Tax and Revenue and the prosecutors, working with District of Columbia agents, have demonstrated their ability to access District of Columbia records and payroll records when those records suit their needs. As such, the District of Columbia, and by extension, the Metropolitan Police Department of the District of Columbia, is a branch of government "closely aligned with the prosecution." *United States v. Brooks*, 966 F.2d 1500, 1503 (D.C. Cir. 1992). It is beyond purview that in this Circuit, the federal government has been charged with the responsibility of being in possession of records held by the Metropolitan Police Department. *Id.; see also In re Sealed Case No. 99-3096 (Brady Obligations)*, 185 F.3d 887, 896 (D.C. Cir. 1999). In fact, this Court, in *Safavian, supra*, noted that in that case, " 'the government' includes any and all agencies and departments of the Executive Branch of the government and their subdivisions, not just the Justice Department, the FBI, the GSA-OIG, and other law enforcement agencies." 233 F.R.D. at 14. By extension, in this case, since "the Government" includes the local District of Columbia government, it should

include other agencies and subdivisions of the District of Columbia, including the Metropolitan Police Department.

### C. THE GOVERNMENT SHOULD BE REQUIRED TO DISCLOSE THE ENTIRE GRAND JURY TESTIMONY OF DARRYL RICHMOND.

The Government has informed counsel for Mr. Irving that:

> MPD Detective Darryl B. Richmond testified in the grand jury that based upon information he obtained from MPD Detective Eugene Lonan, he held a belief that citizens weren't responsible for paying taxes. According to Richmond's testimony, he didn't file his Federal Income Tax Returns for approximately two years.

(June 7, 2007 Letter from Karen E. Kelly to David Schertler.)

As we have argued at length above, the fact that Detective Richmond, a close friend and associate of both Detective Lonon and Detective Irving, engaged in the identical conduct as Mr. Irving, and upon the same advice from Detective Lonon, makes this information highly relevant to Mr. Irving's defense of his subjective good faith belief that he was not violating the tax laws. The particular details of Detective Richmond's testimony in the grand jury could well provide even more compelling and probative corroboration of Mr. Irving's defense and Mr. Irving should be entitled to view at least those portions of the grand jury testimony.

In addition, should Detective Richmond elect to assert his Fifth Amendment privilege at trial, Mr. Irving would seek to admit his grand jury testimony as evidence at trial under Fed. R. Crim. P. 804(b)(1), which provides that former testimony is not hearsay if the testimony given by the witness "at another hearing of the same or a different proceeding . . . if the party against whom the testimony is now offered . . . had an opportunity and similar motive to develop the testimony by direct, cross, or redirect examination." The Government certainly had that opportunity when it was the exclusive examiner of Detective Richmond in the grand jury. Given the fact that

Detective Richmond's grand jury testimony itself could be admissible evidence for the defense at trial, the Government is required to disclose it to the defense.

    WHEREFORE, the Defendant respectfully requests that this Court issue an Order that would compel the IRS and the Government to disclose the specific information set forth above.

    Respectfully submitted,

    SCHERTLER & ONORATO, LLP

    _____/s/_____
    David Schertler (DC Bar #367203)
    David Dickieson (DC Bar #321778)
    601 Pennsylvania Avenue, NW
    North Building, 9th Floor
    Washington, DC 20004
    Telephone: (202) 628-4199
    Facsimile: (202) 628-4177

## CERTIFICATE OF SERVICE

  I hereby certify that on the 17th day of September, 2007, a copy of the foregoing brief was served via U.S. Mail, postage prepaid, upon the following counsel:

Karen E. Kelly, Esq.
Michael Ben'Ary, Esq.
Trial Attorneys
U.S. Department of Justice
Tax Division, Northern Criminal Enforcement Section
P.O. Box 972, Ben Franklin Station
Washington, D.C.  20044

                       /s/
                    David Schertler

Case 1:07-cr-00107-PLF    Document 26    Filed 09/17/2007    Page 16 of 16