# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| **v.** | ) | **Criminal No. 07-107(PLF)** |
| | ) | |
| **MICHAEL C. IRVING** | ) | |
| | ) | |
| **Defendant .** | ) | |

## GOVERNMENT'S CONSOLIDATED MOTIONS IN LIMINE

The United States of America, by and through its attorneys, hereby moves this Court

pursuant to Federal Rules of Evidence 103, 403, 404, 405, 704 and 801 for an order excluding

evidence relating to the following matters:

1. Civil remedies in criminal tax matters;

2. Comment on the exercise of prosecutorial discretion, charging decisions and
   selective prosecution;

3. All hearsay testimony regarding defendant's alleged state of mind;

4. Tax protestor literature and inaccurate written statements of the tax laws;

5. Evidence that other people share defendant's beliefs;

6. Testimony from character witnesses regarding defendant's purported lack of
   intent to commit the crime.

## I. BACKGROUND

On April 24, 2007 a grand jury in the District of Columbia returned a nine count

indictment against defendant. Counts One and Two charge defendant with filing false claims for

refund in violation of 18 U.S.C. § 287. Counts Three through Five charge federal tax evasion in

violation of 26 U.S.C. § 7201.  Counts Six through Nine charge fraud and tax evasion violations of the District of Columbia Code. The charges stem from defendant's affirmative attempts to evade his federal and local income taxes for 2002 through 2005 and his fraudulent attempts to obtain money from the federal government and the District of Columbia.  Trial is scheduled to commence on October 22, 2007.

## II. FACTS

Defendant joined the Metropolitan Police Department ("MPD") as a police officer in 1989.[1]  When hired, defendant filed a Form W-4, which authorized income tax withholding from his paycheck,[2] and he annually filed his tax returns and paid his income taxes.

In November 2002, defendant took steps to stop MPD withholding taxes from his paycheck.  He submitted withholding certificates, Form W-4 and Form D-4, to MPD, wherein he swore under penalties of perjury that he was "exempt" from any withholding.[3]

His statements were false-- he owed and paid $28,105 in federal taxes for tax year 2001. With respect to the 2002 tax year, defendant knew that he would incur a similar tax liability, as his employment status was unchanged.  Defendant submitted a signed "Affidavit" along with the false Form W-4 that falsely represented that he didn't owe taxes in 2001.   Defendant also

---

[1]Defendant earned $155,211 from MPD in 2002, $152,153 in 2003, $136,962 in 2004, and $181,913 in 2005.

[2]The representations that a taxpayer makes on the Form W-4 direct how much an employer should withhold from an employee's income for purposes of complying with income tax laws.

[3]Specifically, he claimed that for the previous tax year (2001), he owed no taxes and was entitled to a full refund of all federal income taxes that had been withheld.  He also swore that he did not expect to owe any income taxes for that current tax year (2002).

submitted a document entitled "W-4T Voluntary Withholding Agreement, Termination of Withdrawal from W-4 Agreement." This document purported to have been issued by the government and bore a label of "Public Domain Form." The defendant submitted that form in an effort to terminate the previously filed Form W-4 that properly authorized withholding from wages.

The MPD's payroll system automatically reset the exemptions back to a standard number of exemptions each year for those employees who claimed "exempt." In March 2003, defendant caused to be filed another set of "exempt" forms to MPD. As a result, defendant enjoyed a bigger paycheck and "tax-free" income.

In Spring 2003, defendant filed a false U.S. Individual Income Tax Return, Form 1040 EZ, for the 2002 tax year, wherein, despite earning $155,211 in wages, he reported that he did not earn any income in 2002 and did not owe any taxes. He represented that he was due a refund payment from the IRS of $32,732.[4]

At the same time, he sent to the District of Columbia a Form D-40 EZ Income Tax Return for the 2002 tax year. Similarly, on that Form he reported no income earned in 2002 and declared that he was entitled to receive $10,534 as a refund, which constituted the DC income tax withheld from his paycheck.

Both the IRS and the DC Office of Tax and Revenue ("OTR") responded to defendant's filings by sending him letters explaining that his filings were inaccurate and seeking his compliance.

---

[4] This was the amount of income taxes withheld from defendant's wages in 2002 before he claimed he was exempt.

The IRS sent defendant a letter dated May 23, 2003 that informed him that the IRS could not accept the Form 1040 EZ because it did not contain the information required by law. The IRS explained that defendant's views of the tax laws were incorrect and advised him to hire a tax lawyer to assist him. The IRS sent defendant IRS publications that provided summaries of federal tax laws and IRS tax collection procedures. One of the publications IRS sent to defendant was a pamphlet entitled, "Why Do I have to Pay Taxes?", which provided simple explanations of the tax laws that require the payment of taxes by U.S. citizens and addressed some common frivolous arguments, including the arguments that: (1) wages are not income, and; (2) filing and paying taxes is "voluntary." The pamphlet explained why such positions are not legally correct and that they are not recognized by the courts. The IRS provided the contact information of an IRS employee, D. Parizek, for defendant to contact for assistance.

In response, defendant sent IRS a document styled: "Michael C. Irving, claimant, versus IRS Agent D. Parizek, Complaint and Private Administrative Remedy and Demand." The document purported to initiate civil litigation against the IRS and Agent D. Parizek.

In June 2003, D.C. OTR also informed defendant that he needed to resolve his DC tax liability. However, instead of contacting the DC government to resolve his tax liability, defendant filed a false 2002 Form 1041, U.S. Income Tax Return for Estates and Trusts in September 2003, in which he sought payment from the IRS of $32,732. According to that filing, the "Michael C. Irving Trust" earned W-2 income of $155,211 and incurred "fiduciary fees" of $155,211, resulting in no taxable income. This "trust" did not exist.

Defendant filed false DC Fiduciary Income Tax Returns for tax years 2000 through 2002 seeking money from DC. In his 2000 filing, defendant sought payment of $12,490, the 2001

filing sought payment of $12,523, and in the 2002 filing defendant sought payment of $32,732.

The IRS attempted to explain to defendant the tax laws and that his filings were false through numerous letters and documents. These documents urged defendant to abandon his scheme and seek advise of legal counsel. The IRS warned defendant that continuing his conduct could result in criminal prosecution.

Notwithstanding the IRS's efforts, defendant continued his scheme and, in December 2003 and again in January 2004, caused to be submitted to MPD false Forms W-4 and D-4, which continued to falsely allege that he was "exempt" from withholdings. Despite earning substantial wages from MPD, defendant failed to file either his 2003 U.S. Individual Income Tax Return or his Form D-40 and didn't pay any taxes for 2003. It was only after defendant accepted the certified letter from the IRS informing him that the IRS intended to levy his bank accounts to collect the money owed to the IRS by defendant, that defendant filed a new 2002 tax return which accurately reported his MPD wages of $155,211 as taxable income. It was filed on December 24, 2004.

However, after forestalling the IRS from taking collection action against him by filing that version of his 2002 tax return, defendant caused to be filed with MPD another false Form W-4 that claimed that he was exempt from withholding. In April 2005, despite earning $136,962 in wages in 2004, defendant did not file his 2004 tax returns or pay taxes on that income. In April 2006, despite earning $181,913 in wages, defendant did not file his 2005 tax returns and paid no taxes on that income. As a result of the above-described scheme, defendant has enjoyed more than $200,000 in tax free income.

The defense indicated by letters dated September 26, 2007 and October 3, 2007, that it

4

intends to call as character witnesses in their case Assistant U.S. Attorneys Glenn Kirshner [sic],

Deborah Sines and Albert Herring from the United States Attorney's Office in the District of

Columbia.  (attached as Exhibit A and Exhibit B).  According to the letter, the defense expects

these character witnesses to testify that in their "experience working with [the defendant], he

would never intentionally commit any crime."

### III.  ARGUMENT

In order to facilitate compliance with Rule 103 of the Federal Rules of Evidence, the

Government moves in limine that certain evidence, as discussed below, be held inadmissible and

defendant instructed not to introduce such inadmissible evidence in the presence of a jury.  Rule

103 © provides:

> In jury cases, proceedings shall be conducted, to the extent practicable, so as to prevent
> inadmissible evidence from being suggested to the jury by any means, such as making
> statements or offers of proof or asking questions in the hearing of the jury.

Under the Federal Rules of Evidence, the jury shall not be exposed to inadmissible

evidence.  Fed. R. Evid. 103©.  It is fundamental that "evidence which is not relevant is not

admissible."  Fed. R. Evid. 402.  "Relevant evidence" is defined as "evidence having any

tendency to make the existence of any fact that is of consequence to the determination of the

action more probable or less probable than it would be without the evidence."  Fed. R. Evid. 401.

Even if evidence is arguably "relevant," the Court should exclude the evidence if its probative

value is substantially outweighed by the danger of unfair prejudice, confusion of the issues,

misleading of the jury, or by considerations of undue delay, waste of time, or needless

presentation of cumulative evidence.  Fed. R. Evid. 403;  United States v. Willie, 941 F.2d 1384,

1395-96 (10th Cir. 1991)(tax protestor's exhibits excluded because they were "confusing,

because the danger of the jury's misuse was great and because the relevant point was provable by other evidence.)  Based upon the foregoing considerations, the government requests the Court grant the instant motion, thereby creating a means with which to comply with the intent of Rule 103©, and thus, prevent the possibility of jury prejudice and confusion through the exposure to inadmissible evidence.

1.    IRS Administrative Remedies are not Relevant in Criminal Tax Prosecution

Argument or evidence that the government could obtain defendant's taxes through civil assessment and enforcement in addition to, or instead of, criminal prosecution is improper argument for a jury.  The fact that the Internal Revenue Service ("IRS") can proceed administratively against taxpayers to assess and obtain taxes, penalties and interest is "irrelevant to the issue of criminal liability" and defendant is not entitled to present such an argument to the jury or obtain a jury instruction so informing the jury.  Placing evidence of alternative civil procedures before the jury is wholly improper.  United States v. Buras, 633 F.2d 1356, 1360 (9th Cir. 1980); United States v. Merrick, 464 F.2d 1087, 1093 (10th Cir. 1972) (finding "no relevance" in a jury instruction that a civil case might be brought against a defendant who was convicted of evasion under 26 U.S.C. § 7201);  Sansone v. United States, 380 U.S. 343, 350 n. 6 (1965) (determination of the punishment to be imposed is a duty Congress has traditionally left to the judge).  Any defense argument that this case could be resolved civilly or administratively should be excluded.  That the IRS has collection procedures available that may be used in obtaining unpaid taxes is clearly irrelevant to whether the defendant has committed the offenses charged.

Moreover, to permit defendant to discuss or present evidence of alternative civil tax

procedures would be an open invitation to the jury to nullify, a practice which has been

repeatedly eschewed in tax prosecutions.  United States v. Wiley, 503 F.2d 106, 107 (8th Cir.

1974).  As the Eighth Circuit Court of Appeals noted:

> federal courts have uniformly recognized the right and duty of the judge to
> instruct the jury in the law and the jury's obligation to apply the law to the
> facts, and that nullification instructions should not be allowed.

United States v. Drefke, 707 F.2d 978, 982 (8th Cir. 1983).

A jury nullification argument improperly encourages the jury to ignore its lawful duty to

consider defendant's guilt or innocence in accordance with the law provided by the Court and the

facts adduced at trial.  See United States v. Funches, 135 F.3d 1405, 1408 (11th Cir. 1998);

United States v. House, 617 F.Supp. 232, 236 (W.D. Mich. 1985) (evidence of this sort clearly

invites the jury to nullify the law, and has no relevance to whether the defendant has committed

the offenses in question).

It was best expressed by the District of Columbia Circuit:

> A jury has no more "right" to find a "guilty" defendant "not guilty" than it has to find a
> "not guilty" defendant "guilty," and the fact that the former cannot be corrected by a
> court, while the latter can be, does not create a right out of the power to misapply the law.
> Such verdicts are lawless, a denial of due process and constitute an exercise of
> erroneously seized power.

United States v. Washington, 705 F.2d 489, 494 (D.D.C. 1983).  Accordingly, such evidence or

argument must not be permitted to be presented to the jury.

>        2.        Exercise of Prosecutorial Discretion is not Relevant and Should be Excluded

Throughout his arguments, defendant repeatedly complained that his indictment is an

abuse of prosecutorial discretion.  This Court denied defendant's baseless allegations of selective

prosecution and held, consistent with other Courts, that the fact of a criminal prosecution requires

some proper exercise of discretion. However, argument or evidence which comments on the

exercise of prosecutorial discretion by the government is improper, and should not be permitted.

Charging decisions properly fall within the ambit of prosecutorial discretion, and the Court

should exclude any evidence or argument regarding other potential charges or less severe charges

that could have been charged in this indictment. Likewise, the Court should exclude evidence

and argument about charging decisions and prosecutorial discretion exercised in the prosecution

of other unrelated tax scoff laws. Charging decisions are not relevant to the jury's consideration

of the criminal culpability of this defendant and should not be considered by jurors.

     3.    <u>Third Party Testimony Regarding Defendant's Alleged State of Mind</u>

Based upon allegations in his pleadings it appears that defendant may attempt to

introduce testimony from third parties regarding defendant's state of mind during the prosecution

years as evidence at trial. This testimony may take the form of statements made to them by the

defendant. This testimony is inadmissible hearsay when offered by the defendant. Fed. R. Evid.

801(d)(2).

Pursuant to Federal Rule of Evidence 801(d)(2), a statement by a party is not hearsay *only*

when it is being offered against the party, and not, as anticipated in the instant case, when it is

being offered on a declarant's behalf. The Rule expressly excludes the admission of any

"statement of memory, or belief to prove the fact remembered or believed." Fed. R. Evid.

803(3). Thus, the Federal Rules of Evidence expressly provide that a defendant's belief may not

be proven through previous out-of-court statements. <u>See</u> <u>generally</u> <u>United States v. Cohen</u>, 631

F.2d 1223 (5th Cir. 1980).

Rule 803(3) provides an exception when the statements constitute a "declarant's then-

8

existing state of mind, emotion, sensation, or physical condition." This exception, however,

applies only to statements regarding a then-existing state of mind and does not include a

statement of memory or belief *to prove the fact remembered or believed* unless it relates to the

execution, revocation, identification or terms of declarant's will. Fed. R. Evid. 803(3); United

States v. Williams, 704 F.2d 315, 322 (6th Cir. 1983). This Rule expressly provides that a

person's belief may not be proven by previous out-of-court statements. See generally Cohen, 631

F.2d at 1223; See also House, 617 F. Supp. at 236 (any third-party testimony purporting to

establish defendant's belief regarding his tax obligation is inadmissible hearsay).

The Sixth Circuit addressed this issue in a similar tax case. See United States v. Taylor,

991 F.2d 797 (6th Cir. 1993).[5] The trial court properly excluded third-party testimony as to

defendant's good faith belief that he was not violating the law. The Sixth Circuit rejected

defendant's assertion that such testimony fell within the exception to the hearsay rule dealing

with a declarant's state of mind. See id. The Court noted that Rule 803(3) "carefully excludes

statements of belief for good reason." Id. Exceptions to the hearsay rule were "premised on

some set of circumstances providing the trustworthiness that would ordinarily be provided by

testimony under oath at trial." Id. Finding no such indicia of trustworthiness in the proffered

testimony, the court stated:

> if a taxpayer goes around telling his friends he has researched the law or
> read a book, and now believes that wages are not income and he and all
> the rest of the world's wage earners are exempt from paying income taxes,
> the guaranty of trustworthiness anticipated by Rule 803(3) is completely
> lacking.

Id. Such out of court "statements as to beliefs" were obviously made in an effort to build a

---

[5]This is an unpublished opinion.

defense and should be excluded as hearsay. See United States v. Ponticello, 622 F.2d 985, 992 (9th Cir. 1980); United States v. DeBright, 730 F.2d 1255, 1259 (9th Cir. 1984).

Permitting defense witnesses to testify as to defendant's purported beliefs would violate not only the plain language of Rule 803(3), but also the principles underlying the hearsay rule by enabling the defense to present defendant's purported beliefs to the jury without having them subjected to cross examination. Indeed, a defendant is not permitted to testify as to his own prior out-of-court statements which are consistent with his trial testimony except to rebut a charge of recent fabrication. See United States v. Marin, 669 F.2d 73, 84 (2d Cir. 1982). Thus, the defense should not be able to offer any testimony regarding the defendant's purported beliefs by any witness other than defendant.

    4.    Evidence of Inaccurate Statements of the Law Offered By Defendant as Evidence that He Was Not Required to File Tax Returns

Federal trial courts have struggled over precisely how to allow a criminal defendant to present a good faith defense to the element of willfulness. Perhaps the best discussion of the line between permissible and impermissible evidence of good faith was offered by the Tenth Circuit Court of Appeals in the Willie case, a case involving tax protestor defenses. The court noted:

> "Willfulness" is defined as the "voluntary, intentional violation of a known legal duty." Cheek v. United States, 111 S.Ct. at 610 (emphasis added). To be a relevant defense to willfulness then, [a defendant], because of his belief or misunderstanding, must not have known he had a legal duty. Id. at 611 (defendant must be "ignorant of his duty"). * * * In Cheek, the Supreme Court stated that a "defendant's views about the validity[or constitutionality] of the tax statutes are irrelevant to the issue of willfulness [and] need not be heard by the jury. . .[I]t makes no difference whether the claims of invalidity are frivolous or have substance." Id. at 613. * * *[P]roof of the reasonableness of a belief that he should not have a duty only proves the reasonableness of the defendant's disagreement with the existing law and is, therefore properly excluded as irrelevant.

10

<u>Willie</u>, 941 F.2d at 1392.

<u>Cheek</u>, as elucidated in <u>Willie</u>, defines the good faith defense to willfulness in tax cases as a mistaken belief by the defendant that the law did not require him to file a tax return or pay a tax. <u>See</u> <u>United States v. Dack</u>, 987 F.2d 1282, 1285 (7th Cir. 1993); <u>United States v. Powell</u>, 955 F.2d 1206, 1212 (9th Cir. 1991). A defendant's view regarding the constitutionality and validity of the tax laws is irrelevant because a mere disagreement with the tax laws is no defense to any of the charges contained in the indictment. The defendant's views about the validity of the tax statutes are irrelevant to the issue of "wilfulness" and the jury need not consider them. If the defendant's views regarding the constitutionality and validity of the tax laws were put before the jury, an instruction to disregard them would be proper. <u>Cheek</u>, 498 U.S. at 206. Therefore, any testimony by the defendant as to what he thought the law *should be*, as well as his prior views on the constitutionality and validity of the law, is irrelevant and must be excluded.

Likewise, the Court may properly exclude admission into evidence materials upon which defendant claims to have relied upon in forming his belief that he was not obligated to file tax returns. <u>United States v. Nash</u>, 175 F. 3d 429, 435 (6th Cir. 1999); <u>Middleton</u>, 246 F.3d at 839. While a trial court must afford the defendant an opportunity to present the relevant portions of those materials that he relied upon, usually through his testimony, a court should exclude as exhibits such materials which pose a "danger of confusing the jury by introducing purported legal analysis that [is] at odds with the district court's instructions." <u>Nash</u>, 175 F.3d at 435.

The government anticipates that defendant may attempt to introduce into evidence legal decisions, letters written by the defendant that report the contents of such decisions, and other documents that contain inaccurate statements of the law. Although defendant, in the event that

he testifies, is entitled to claim reliance upon such documents to explain the reasons for his

purported beliefs regarding the Internal Revenue laws and to establish that he conducted research

into these matters, defendant may not introduce the opinions, books, or other documents into

evidence.  Such materials both usurp the function of the trial court to provide the law to the jury

and may unduly confuse the jury on the law.

      In upholding the exclusion of such evidence, the Court in United States v. Kraeger, 711

F.2d 6, 7-8 (2d Cir. 1983), held as follows:

> The trial court did not abuse its discretion in excluding the documentary evidence,
> including federal court decisions, which appellant claims to have read in forming
> his opinions regarding the tax laws.  Evidence such as this is likely to confuse a
> jury on the distinction between questions of law, which are for the Court to decide
> and question of fact, which are for the jury.  (Citations omitted).

Accord United States v. Burton, 737 F.2d 439, 443 (5th Cir. 1984);  United States v. Gleason,

726 F.2d 385, 388-89 (8th Cir. 1984);  United States v. Ingredient Technology Corp., 698 F.2d

88, 97 (2d Cir. 1983);  United States v. Bernhardt, 642 F.2d 251, 253 (8th Cir. 1981).  The

defendant should similarly be precluded from offering such confusing evidence in the instant

case.

      5.     Testimony Regarding Third Party Tax Conduct

      Defendant has indicated he intends to present evidence in the form of witness testimony

from friends and other law enforcement officers who allegedly engaged in tax crimes based upon

advise similar to that received by defendant.  Such testimony, in itself, is completely irrelevant as

to this defendant and will not assist a jury in deciding whether he acted willfully.  It is

appropriate for this Court to exclude testimony that only shows that there are others who agree

with defendant's outrageous claims about the state of the tax law.  Such evidence should be

excluded as irrelevant and confusing.  See <u>United States v. Middleton</u>, 246 F.3d 825, 839 (6th

Cir. 2001); <u>Nash</u>, 175 F.3d at 435; <u>United States v. Lussier</u>, 929 F.2d 25, 31 (1st Cir. 1991)(per

curium).

       In a tax case, willfulness is an intentional violation of a known legal duty.  See <u>Cheek</u>,

498 U.S. at 201.  A defendant does not act willfully if he has a misunderstanding or good faith

belief that he was not violating any of the provisions of the tax laws, regardless of whether this

misunderstanding or belief is objectively reasonable as long as there is a good faith basis for the

belief.  See <u>id.</u> at 202.  Because this inquiry is subjective, the understanding or belief of anyone

other than defendant is irrelevant, and "[e]vidence which is not relevant is not admissible."  Fed.

R. Evid. 402.  Moreover, under Fed. R. Evid. 704, a witness may not state an opinion as to

defendant's knowledge or willfulness, a mental state that constitutes an element of the crime

charged.  <u>United States v. Windfelder</u>, 790 F.2d 576, 582 (7th Cir. 1986) (IRS agent testimony

on willfulness not admissible under Rule 704); <u>see also</u> <u>United States v. Felak</u>, 831 F.2d 794, 797

(8th Cir. 1987) (defense psychiatrist testimony on mental state of tax evasion defendant not

admissible.)  The best evidence of defendant's good faith is the testimony of defendant.  <u>Cf.</u>

<u>United States v. Hairston</u>, 819 F.2d 971, 973 (10th Cir. 1987) (direct testimony of defendant is

more probative of his state of mind than proffered documents).  The alleged tax conduct of

others, or their alleged tax beliefs are in no way relevant to the actions of defendant in this case.

     6.    <u>Character Witnesses May Not Testify as to the Defendant's "Lack of Criminal
Intent"</u>

       The defendant has indicated that he expects to call three AUSAs to testify that in their

"experience working with [the defendant], he would never intentionally commit any crime."  The

proffered testimony of the defendant's character witnesses is prohibited by several of the Federal Rules of Evidence. First, under Rule 704, testimony regarding the presence or absence of criminal intent is inadmissible. Next, Rule 404 only allows the accused to put on character evidence of pertinent traits, and the defendant's propensity not to intentionally commit crimes is not a pertinent character trait in this case. Lastly, pertinent character traits can only be established through reputation or opinion evidence unless they are an essential element of a crime charged.

### A.    Rule 704

Testimony from any witness that defendant "would never intentionally commit a crime" is inadmissible under Fed. R. Evid. 704(b). While the defense has not specifically designated AUSAs Kirschner, Sines or Herring as expert witnesses, their proffered testimony would certainly be "in the form of an opinion or inference" about defendant's lack of criminal intent, and thus subject to the prohibitions contained in Rule 704. Fed. R. 704(a). The Rules of Evidence specifically prohibit a witness from expressing "an opinion or inference as to whether defendant did or did not have the mental state or condition constituting an element of the crime charged or of a defense thereto." Fed. R. Evid. 704(b). Whether or not the defendant acted willfully is a matter "for the trier of fact alone." Fed. R. Evid. 704(b). Testimony that the defendant "would never intentionally commit a crime" would clearly invade the province of the jury in this case, who will be tasked with deciding whether or not defendant acted willfully.

### B.    Rule 404

Under Fed. R. Evid. 404, evidence of an accused's character is not admissible for the purpose of proving action in conformity therewith on a particular occasion. Thus, it would be

improper for any witness to testify that, based on their belief that at other times defendant did not commit any intentional crimes, he therefore would not have intentionally committed the instant offenses.  While the defendant's general character for being a law-abiding person is arguably a "pertinent trait," even with respect to that trait, defendant should not be allowed to put on evidence of his character for that trait by reference to specific instances of conduct.  See Fed. R. Evid. 404(a)(1).  As the D.C. Circuit Court has recognized, "while a criminal defendant can put character in issue, the evidence can only concern a 'pertinent trait of character,' and even then may be excluded if 'its probative value is substantially out-weighed by the danger of unfair prejudice."  United States v. Harris, 491 F.3d 440, 447 (D.C. Cir. 2007).  Here, the defendant should not be allowed to offer any evidence for his propensity not to intentionally commit crimes.

   C.  Rule 405

   Federal Rule of Evidence 405 sets forth the boundaries for character evidence in cases where character evidence is otherwise admissible.  Unless character or a trait of character is an essential element of the crime charged, character must be proved by reputation or opinion evidence.  See Fed. R. Evid. 405; United States v. Brown, __ F.Supp.2d ___, 2007 WL 2409729, 1-2 (D.D.C. August 24, 2007)(Judge Kollar-Kotelly's memorandum opinion regarding the use of character testimony in trial for obstruction of justice and making false statements).  Thus, defendant cannot establish any non-essential character traits through specific instances of prior conduct.  United States v. Hill, 40 F.3d 164, 169 (7th Cir. 1994)(disallowing evidence of "law-abidingness" through specific instances of conduct).  It is well established that evidence of prior acts of good conduct are not admissible to negate criminal intent.  See United States v. Camejo,

929 F.2d 610, 612-13 (11th Cir. 1991)(citing <u>Michelson v. United States</u>, 335 U.S. 469 (1948)).

The Supreme Court recognized the proposition that character evidence must be proved by

reputation long before the enactment of the Federal Rules of Evidence in 1975.  As stated by the

Supreme Court, "[a] witness may not testify about defendant's specific acts or courses of conduct

or his possession of a particular disposition or of benign mental and moral traits; nor can he

testify that his own acquaintance, observation, and knowledge of defendant leads to his own

independent opinion that defendant possesses a good general or specific character, inconsistent

with commission of acts charged."  <u>Michelson</u>, 335 U.S. at 477.

In the present case, defendant should not be permitted to introduce testimony regarding a

non-pertinent character trait, such as his propensity not to intentionally commit crimes.  While

defendant's general character for law abidingness may be pertinent, defendant's proffered

testimony is not limited to his law abidingness, but deals with the presence or absence of

criminal intent.  Even where character witnesses are allowed to testify regarding a pertinent

character trait, it is impermissible to call witnesses to testify that they have had personal

experiences with defendant that led them to conclude he would never intentionally commit a

crime.  This is precisely the type of character testimony that the Federal Rules of Evidence

prohibits.  Such evidence would amount to nothing more than an attempt to negate criminal

intent with prior instances of conduct.  Character witnesses must be limited to testifying

regarding defendant's reputation in the community regarding a pertinent trait, such as honesty.

The Federal Rules of Evidence prohibit character witnesses from testifying "that in their

experience working with [defendant], he would never intentionally commit any crime."

Accordingly, the character witnesses should be specifically instructed that they are not permitted

to offer their opinions about defendant's intentions to commit crimes because such testimony

violates the Federal Rules of Evidence and invades the province of the jury.

### IV.  <u>CONCLUSION</u>

For the reasons stated above, the government's Motions in Limine should be granted.

Respectfully submitted,

John Marrella
Deputy Assistant Attorney General
For Criminal Matters


 s/Karen E. Kelly
Karen E. Kelly
Michael P. Ben'Ary
Trial Attorneys

§|O   SCHERTLER & ONORATO, L.L.P.

| David Schertler<br>*DC & IL Bars* | Vincent H. Cohen, Jr.<br>*DC, MD & NJ Bars* | Habib F. Ilahi<br>*DC & TX Bars* |
|---|---|---|
| Danny C. Onorato<br>*DC & CA Bars* | David H. Dickieson<br>*DC, MD, VA & PA Bars* | Carroll Crumbaugh L|
| | Lisa Fishberg<br>*DC, MD & NY Bars* | *DC & MD Bars* |
| | | Julie L. Mitchell<br>*DC, MD & VA Bars* |
| | Mark E. Schamel<br>*DC, MD & NY Bars* | Mansi J. Shah<br>*VA Bar* |
| | Robert J. Spagnoletti<br>*DC, NJ, NY & TX Bars* | Michael Starr<br>*DC Bar* |
| | | Peter V. Taylor<br>*DC Bar* |

September 26, 2007

**VIA FACSIMILE AND FIRST CLASS MAIL**

William M. Nebeker, Esq.
United States Attorneys Office
Civil Division
555 Fourth Street, N.W
Washington, D.C.  20001

RE:    ***Testimony of AUSAs Glenn Kirshner and Deborah Sines***

Dear Mark:

Pursuant to 28 C.F.R. §16.23(c), we are providing a statement setting forth a summary of the testimony sought from Assistant U.S. Attorneys Glenn Kirshner and Deborah Sines of the U.S. Attorney's Office in Washington, D.C. in connection with the case of *United States v. Michael C. Irving*, Crim. No. 07-CR-107, before the Honorable Paul L. Friedman.  Enclosed are subpoenas for Mr. Kirshner and Ms. Sines.

We expect that Mr. Kirshner and Ms. Sines will testify as character witnesses for Detective Irving.  Both will testify about the professional relationship with Detective Irving and the fact that they worked with him for a number of years while he has served as a Homicide Detective with the Metropolitan Police Department.  Both are expected to testify as to their opinions as to Detective Irving's character and reputation for honesty, integrity, and diligence as a detective.  We also expect they will testify that in their experience working with him, he would never intentionally commit any crime.

Please feel free to call me if you have any additional questions.

Best regards,

David Schertler
Counsel for Michael Irving

cc:    Karen E. Kelly, Esq.

# S|O  SCHERTLER & ONORATO, L.L.P.

| | | |
|---|---|---|
| David Schertler | Vincent H. Cohen, Jr. | Habib F. Ilahi |
| *DC & IL Bars* | *DC & NJ Bars* | *DC & TX Bars* |
| Danny C. Onorato | David H. Dickieson | Carroll Crumbaugh Love |
| *DC & CA Bars* | *DC, MD, VA & PA Bars* | *DC & MD Bars* |
| | Lisa Fishberg | Julie L. Mitchell |
| | *DC, MD & NY Bars* | *DC, MD & VA Bars* |
| | Mark E. Schamel | Mansi J. Shah |
| | *DC, MD & NY Bars* | *VA Bar* |
| | Robert J. Spagnoletti | Michael Starr |
| | *DC, NJ, NY & TX Bars* | *DC Bar* |
| | | Peter V. Taylor |
| | | *DC Bar* |

October 3, 2007

**VIA FACSIMILE AND FIRST CLASS MAIL**
William M. Nebeker, Esquire
United States Attorney's Office
Civil Division
555 4th Street, N.W.
Washington, D.C. 20001

RE:    **Testimony of AUSA Albert Herring**

Dear Mark:

Pursuant to 28 C.F.R. §16.23(c), we are providing a statement setting forth a summary of the testimony sought from Assistant U.S. Attorney Albert Herring of the U.S. Attorney's Office in Washington, D.C., in connection with the case of *United States v. Michael C. Irving*, Crim. No. 07-CR-107, before the Honorable Paul L. Friedman. Enclosed is a subpoena for Mr. Herring.

We expect that Mr. Herring will testify as character witnesses for Detective Irving. He will testify about the professional and personal relationship with Detective Irving and the fact that he worked with him for a number of years while he has served as a Homicide Detective with the Metropolitan Police Department. He is expected to testify as to his opinions as to Detective Irving's character and reputation for honesty, integrity, and diligence as a detective. We also expect he will testify that in his experience working with him, he would never intentionally commit any crime.

Please feel free to call me if you have any additional questions.

Best regards,

David Schertler
Counsel for Michael Irving

Cc:  Karen E. Kelly, Esq.

ATTORNEYS AT LAW | 601 Pennsylvania Avenue, N.W.   202.628.4199
North Building, 9th Floor             202.628.4177 *fax*
Washington, D.C. 20004-2601          www.schertlerlaw.com