**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |  |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) ) ) | **07-CR-107 (PLF)** |
| v. | ) ) ) | **Judge Paul L. Friedman** |
| **MICHAEL C. IRVING** | ) ) ) ) |  |

**OPPOSITION TO GOVERNMENT'S CONSOLIDATED MOTIONS *IN LIMINE***

Defendant Michael C. Irving, through undersigned counsel, hereby files this Opposition to the Government's Consolidated Motions *in Limine*. For the reasons set forth below, we ask the Court to deny the Government's Motions *in Limine* in their entirely.

**FACTUAL BACKGROUND**

Detective Irving was charged by indictment with nine criminal counts: (1) Two counts of making a false claim for a refund in violation of 18 U.S.C. § 287; (2) Three counts of attempting to evade federal income tax in violation of 26 U.S.C. § 7201; (3) One count of fraud in violation of 22 D.C. Code § 3221(a); and (4) Three counts of evading District of Columbia income taxes in violation of 47 D.C. Code § 410(a). All the charges arise from the Government's allegation that, from 2003 through 2005, Mr. Irving intentionally failed to file tax returns and did not pay federal and District income taxes during those years. Mr. Irving is charged with violations of both the federal and the District of Columbia tax code. Motions *in limine* were due by all parties on Friday, October 5, 2007. Both the Government and Detective Irving filed motions, and Detective Irving now responds to and opposes the Government's Consolidated Motions *in Limine*.

**DISCUSSION**

Our Opposition addresses the six issues raised by the Government, in which it seeks to restrict or eliminate evidence and testimony proffered by Detective Irving and his counsel. This Opposition responds to each of the six issues in the order they were raised in the Government's Motion.

### 1. IRS ADMINISTRATIVE REMEDIES ARE RELEVANT TO THE FACTS OF THIS CASE.

The Government makes the argument that Detective Irving should not be able to discuss or present evidence of alternative civil tax procedures that the IRS and Department of Justice could have pursued against Detective Irving instead of seeking criminal prosecution. This argument is logically inconsistent since the Government has indicated that it intends to present evidence of correspondence from the IRS to Detective Irving, in which the IRS specifically sets forth the various alternative civil remedies the Government was threatening to pursue, including administrative collection actions, civil fines, and penalties. Moreover, the Government has already indicated that they intend to present evidence showing how Detective Irving reacted to the various threats of administrative collection actions, civil fines, and penalties. Obviously, the introduction of this evidence by the Government opens the door for Detective Irving to present evidence concerning alternative remedies.

When Government counsel set forth the facts they believe to be relevant, they noted that: "The IRS warned defendant that continuing his conduct could result in criminal prosecution." (Gov't Motion at 4). This is at best a half-truth, and it demonstrates a distortion of the facts that the Government advances in its motion *in limine*. The warnings Detective Irving received were focused on threats of civil penalties and, specifically, the $500 frivolous return penalty, which was constructed to deal with precisely these types of filings. The Government would have the

2

jury sheltered from learning of the actual threats made by the IRS and, instead, limit the evidence to a distorted discussion of the vague and buried reference to criminal prosecution in the IRS correspondence.

Further, the Government notes in its argument (Gov't Motion at 4) that Detective Irving responded to the threat of an IRS civil levy on his bank account by filing a complete and correct 2002 tax return, thereby demonstrating the effectiveness of such civil remedies. It would be inequitable for the Government to present this documentary evidence to the jury, and at the same time preclude Detective Irving from referring to the administrative remedies threatened by the IRS, such as the levy.

To support its effort to limit the presentation of evidence to the jury on this issue, the Government implies that Detective Irving intends to present such evidence to encourage "jury nullification." The Government then refers to cases that discuss the impropriety of jury nullification arguments or instructions. However, the Government's analysis misses the point completely. The evidence of civil remedies and administrative remedies will not be presented as a means to encourage the jury to engage in jury nullification nor will Detective Irving request a jury nullification instruction. The evidence of alternative remedies will be presented to provide a complete picture of the communications received by Detective Irving and the impact that such communications had on his state of mind—the primary issue in this case. The evidence of alternative remedies will also be raised to show how Detective Irving responded to the threats of alternative remedies. Lastly, the evidence of alternative remedies will be used to explain how

Congress has crafted a remedy specifically designed to address the situation in this case, which will be useful to the jury in seeking to interpret how the offenses charged.[1]

The Government cites no cases that preclude a defendant from discussing the available civil remedies and his reaction to IRS threats of imposing those remedies. The cases cited by the Government – *United States v. Buras*, 633 F. 2d 1356, 1360 (9th Cir. 1980), *United States v. Merrick*, 464 F 2d 1087, 1093 (10th Cir. 1972), and *Sansone v. United States*, 380 U.S. 343, 350 n. 6 (1965) – do not support the proposition that evidence should be excluded, but rather, only that a jury nullification instruction should not be given. Considering the number of tax protester cases filed by the Government since the *Sansone* case in 1965, it is reasonable to expect that the issue of raising alternative remedies would have been briefed and decided in numerous jurisdictions with written opinions. Nevertheless, the Department of Justice Tax Division, as the repository of all such legal authority on this subject, is unable to present a single case where evidence of alternative remedies has been excluded.

In sum, the existence of alternative remedies is a critical fact that will be raised in both the Government's and defense's case-in-chief. Such evidence is relevant to the issue of Detective Irving's state of mind, and it clarifies the Government's approach to the situation not as a criminal matter but as a civil one warranting only a $500 frivolous return fine. To preclude evidence of such alternative remedies would present a completely distorted view of the facts. As such, Detective Irving would be severely prejudiced by the exclusion of evidence relating to alternative remedies. For these reasons, this aspect of the Government's motion *in limine* must be denied.

---

[1] The jury is entitled to know that Congress provided the IRS with a specific remedy for frivolous returns and that any attempt to expand some other statutory offense to cover frivolous returns must be interpreted narrowly to remain consistent with Congressional intent.

## 2. THE GOVERNMENT'S REQUESTED LIMITATION ON DISCUSSION OF THE EXERCISE OF PROSECUTORIAL DISCRETION IS UNSUPPORTED AND OVERBROAD.

The Government fails to cite a single authority supporting its next request that the Court limit evidence or argument relating to prosecutorial discretion in tax matters. In the absence of any authority to support this limitation, Detective Irving maintains that a decision in advance of trial is premature and unwarranted. In fact, as discussed herein, there is substantial authority supporting a defendant's right to criticize the prosecutor's discretionary actions or argue for an instruction for a "lesser included offense," regardless of how the prosecutor exercises prosecutorial discretion.

Sound policy reasons and legal authority support the notion that a defendant should be entitled to contest the prosecutor's case, including the specific allegations in the case, the manner in which the case was investigated and charged, and the manner in which the case was managed. It is well settled that a defendant may challenge the investigation as a way to attack the government's credibility, and these same considerations of justice allow a defendant to critique the discretionary actions of the prosecutor. "Details of the investigation process potentially affect credibility and more importantly, the weight to be given to evidence produced by his investigation." *United States v. Sager*, 227 F3d 1138, 1145 (9th Cir. 2000). For example, investigative mistakes "hurt the credibility of the Government's witnesses" and provide a basis for arguing that the prosecution's case is "haphazard and inconsistent as well as prone to errors." *United States v. Howell*, 231 F3d 615, 625 (9th Cir. 2000). Hence, a defendant should be permitted to "attack . . . the thoroughness and even good faith of the investigation . . . ." *Kyles v. Whitley*, 514 US 419, 443 (1995); *see also Bowen v. Maynard*, 799 F2d 593, 613 (10th Cir. 1986) ("A common trial tactic of defense lawyers is to discredit the caliber of the investigation

5

*or the decision to charge the defendant* and we may consider such evidence in assessing a possible *Brady* violation") (emphasis added).

The jury has the right to know that the case could have been charged in a different manner. Otherwise, the jury may assume incorrectly that the only law against the conduct committed by the defendant is the one under which he is charged and that defendant should be convicted to deter others. On the other hand, if the jury is aware of another manner in which the case could have been handled by the prosecution, it will focus on whether conviction of this defendant is appropriate. At a minimum, trial lawyers may argue this point to the jury, with or without a specific jury instruction.

Even if the prosecutor doesn't present an available lesser charge for consideration by the jury, a comparative instruction on a related offense may be useful in clarifying the elements of the charged offense. Under this theory, a defendant may request an instruction informing the jury that if it finds that the defendant committed the related offense but not the charged offense, it must acquit. *See People v. Preston*, 9 Cal. 3d 308, 318-9 (Cal. 1973) (jury instructed on both the charged offense [murder] and the uncharged offense [accessory]); *see also People v. Johnson*, 222 P2d 335, 340, 342, 344-5 (Cal. Dist. Ct. App. 1955). A related concept is used in defining the burden of proof to the jury by comparing the required burden with another lesser burden. *See* BAJI 2.62; Devitt, Blackmar, et al., *Fed. Jury Prac. & Inst.*, § 97.04, p. 730 (1987). Obviously, before any such comparison can be made, the jury must be made aware of the existence of alternatives that the prosecutor chose to forego.

A defendant should be able to attack the underlying credibility of the representations of the prosecutor by addressing the choices and options that the prosecutor could have made but did not. For example, the Government has taken a single conceptual offense – Detective Irving's

assertion that he was tax exempt – and constructed a case comprised of nine felony counts. A Defendant must be allowed to accurately characterize this strategy by the prosecutor. The Government has stretched allegations to in order to charge Detective Irving with fraud in the first degree claim under D.C. law, while at the same time bypassing misdemeanor claims of failing to file tax returns. The Government should be prepared to defend its construction of the case.

Obviously, Detective Irving does not intend to present evidence that he violated a misdemeanor "failure to file" statute, but he should be allowed to argue in closing, if the facts warrant such an argument, that the prosecutor erred by failing to charge a lesser offense or that the prosecutor has improperly exercised the Government's discretion by overcharging the actions in this case.

### 3. TESTIMONY REGARDING DETECTIVE IRVING'S STATE OF MIND NOT OFFERED FOR THE TRUTH OF THE MATTER ASSERTED AND THEREFORE NOT HEARSAY

Next, the Government moves this Court to preclude Detective Irving from introducing testimony by third party witnesses in regards to his state of mind. The Government's argument rests on the fundamental and erroneous premise that such testimony as hearsay. As a result, the Government's argument in this regard fails.

Under Fed. R. Evid. 802, hearsay is inadmissible at trial, with limited exceptions provided under related rules commonly known as the "hearsay exceptions." Under Fed. R. Evid. 801(c), hearsay is expressly defined as an out-of-court statement "offered in evidence to prove the truth of the matter asserted" in the statement. Fed. R. Evid. 801(c). It is axiomatic that if a statement is not being offered to prove the truth of the matter asserted in the statement, then it is not hearsay and consequently not inadmissible under the general hearsay exclusion rule. *United States v. Cantu*, 876 F.2d 1134,1137 (5th Cir. 1989). Stated differently, no hearsay exception is

necessary to justify the admission of an out-of-court statement not used to prove the matter asserted.

Here, Detective Irving may present evidence through third party witnesses who will testify that at the time period relevant to the indictment, Detective Irving made statements to them indicating that he believed that he was not required to pay taxes or file tax returns. Detective Irving will not use these statements to prove the matter asserted, i.e., that he was not required to pay taxes or file returns, but, rather for the purpose of showing *proof of his belief at the time* that he was not violating any legal duty. Such statements are not hearsay and do not need justification under one of the hearsay exceptions.

Despite the fact that the proposed testimony does not constitute hearsay, the Government argues that Fed. R. Evid. 803(3) specifically excludes "a statement of memory or belief to prove the fact remembered or believed." The Government's reading of Fed. R. Evid. 803(3) is incorrect.

Fed. R. Evid. 803(3) excludes from the hearsay rule:

> A statement of the declarant's then existing state of mind, emotion, sensation, or physical condition (such as intent, plan, motive, design, mental feeling, pain, and bodily health), but not including a statement of memory or belief to prove the fact remembered or believed . . .

Even assuming that the hearsay rule somehow precludes a prior statement made by Detective Irving to others to the effect that it was legal for him not to file tax returns and pay taxes, such a statement falls squarely within the exemption of Fed. R. Evid. 803(3) because it is clearly an assertion of Detective Irving's state of mind at the time. Contrary to the Government's contention, such a statement would not fall under the Rule's proscription of a statement of memory or belief. The Advisory Committee Notes state that:

8

> The exclusion of "statements of memory or belief to prove the fact remembered or believed" is necessary to avoid the virtual destruction of the hearsay rule which would otherwise result from allowing state of mind, provable by a hearsay statement, *to serve as the basis for an inference of the happening of the event which produced the state of mind*.

Advisory Note to Paragraph (3)(emphasis added.) As the advisory note makes clear, the obvious concern of admitting statements of memory or belief to prove the fact remembered or believed was to prevent such statement from proving the underlying factual conduct that gave rise to the memory or the belief. The testimony we propose does not have the affect of serving "as the basis for an inference of the happening of the event which produced the state of mind." The testimony that we propose does not serve to prove the happening of any underlying "event." Its sole purpose is to show Detective Irving's state of mind at the time, which is precisely what Fed. R. Evid. 803(3) permits.

In support of its argument, the Government relies on an unpublished decision out of the Sixth Circuit, *United States v. Taylor*, 991 F.2d 797 (6th Cir. 1993). We submit that the Sixth Circuit's analysis in *Taylor* is incorrect and is not applicable law in this Circuit. The *Taylor* analysis does not comport with the well-established hearsay analysis we described above. The Court in *Taylor* apparently found that there is no guaranty of trustworthiness in an individual telling friends that he believes he is exempt from paying taxes and excluded such proffered testimony. Yet such a statement reflects one's state of mind at the time and, as such, it is clearly admissible under Fed. R. Evid. 803(3). The Government can, of course, impeach or argue the credibility of such statements, even if admissible under a hearsay exception, but that does not prohibit their admission. In this regard, the Government is free to try to rebut such statements as "an effort to build a defense, " but again, that does not impact their admissibility under Fed. R. Evid. 803(3). The Government claims that such statements, if admitted, would not be subject to

9

cross-examination, but that argument fails because it applies to all statements admitted under any hearsay exception, whether it be a "present sense impression," an "excited utterance," a recorded recollection, or any other hearsay exception not conditioned on the availability of the declarant. With respect to any statement that qualifies under any of the hearsay exceptions set forth in Fed. R. Evid. 803, the opposing party does not have the opportunity to cross-examine the declarant about the statement.

For instance, in *United States v. Cantu*, 876 F.2d 1134 (5th Cir. 1989), the defendant sought to introduce out-of-court statements made by a government informant that he claimed bolstered his entrapment defense. The trial court excluded the testimony, holding that the statements constituted hearsay. *Id.* Specifically, the defendant sought to introduce statements by the informant encouraging the defendant to solicit drug customers. *See id.* The statements were offered not to prove that the informant truly wanted the defendant to get drug customers, but rather to show the informant's state of mind—that he was interested in connecting the defendant to criminal activity. *See id.* On appeal, the Fifth Circuit reversed and remanded, holding that "the significance of the statements lies solely in the fact that they were made; the truth of the statements is irrelevant for that purpose," and, therefore, "the trial court erred in concluding that the proffered statements were hearsay." *Id.* at 1137. The Court went on to address the trial court's concern that such statements are not trustworthy, finding that:

> The trial court's concern over the trustworthiness of Cantu's testimony was misplaced. Cantu's credibility, like the testimony of any witness, was subject to the crucible of cross-examination and was within the exclusive province of the jury. The veracity of a claim that certain statements were made was subject to evaluation like any other testimony presented at trial. That evaluation was for the jury. *See Dutton v. Evans,* 400 U.S. 74, 88, 91 S.Ct. 210, 219, 27 L.Ed.2d 213 (1970) ("The hearsay rule does not prevent a witness from testifying as to what he has heard; it is rather a restriction on the proof of fact through extrajudicial statements.");

10

> *see also United States v. Parry,* 649 F.2d 292 (5th Cir. 1981);
> *United States v. Carter,* 491 F.2d 625 (5th Cir. 1974).

*Id.* Likewise, any witnesses testifying in the current case will be subject to cross-examination as to the circumstances surrounding the statements and the veracity of their claim that such statements were made.

Finally, the *Cantu* Court found that "[t]he trial court's erroneous exclusion of statements made by [the informant] deprived Cantu of a critical element of his entrapment defense," causing his testimony to "lack coherence and continuity." *Id.* Similarly, the statements at issue in the current case directly relate to Detective Irving's good faith defense. Thus, the exclusion of any such testimony would significantly prejudice Detective Irving and result in manifest injustice.

### 4. THE DEFENDANT MUST BE PROVIDED WITH A FAIR CHANCE TO EXPLAIN HIS ACTIONS WITH RELEVANT DOCUMENTS.

The Government seeks to preclude Detective Irving from presenting exhibits he relied upon in coming to the conclusion that he was tax exempt. This appears to be an attempt to exclude from the jury the volume of confusing "tax protester literature" frequently discussed in an ordinary tax protester case. The Government's concern is misplaced. This is not a typical "tax protester" case and Detective Irving was not a classic tax protester. At no time did he believe that our tax system is unconstitutional. Instead, Detective Irving believed that he could become tax exempt *within the existing law* by relying on the advice of others and utilizing a "tax return preparer" who was sufficiently knowledgeable about the various loopholes within the tax system that others had been aware of and exploited.

Nonetheless, although Detective Irving agrees that the jury should not be confused with a barrage of confusing "tax literature," the jury should not be left with the misimpression that Detective Irving has chosen not to present any evidence to the jury about the actual tax-exempt

11

theories. In particular, the Government cannot preclude the introduction of tax literature and then argue to the jury that the Defendant has failed to produce any documentary evidence to support his mistaken legal theory. The Defendant must be allowed to produce the actual documents which were submitted to the IRS and to the MPD, even if such documents contain the convoluted legal theories that may confuse the jury.

It is unclear exactly what documents the Government is seeking to exclude. The Government motion mentions "letters" by the Defendant, but it fails to identify any such letters. In fact, it appears that this portion of the Government's brief was cut and pasted from some other tax protester case where volumes of tax protester literature were provided during discovery. That is simply not the case here.

> **5. DETECTIVE IRVING SHOULD BE ALLOWED TO INTRODUCE THE TESTIMONY OF THIRD-PARTY WITNESS REGARDING THEIR KNOWLEDGE OF TAX CONDUCT BECAUSE THAT TESTIMONY WILL PROVIDE CORROBORATION AND SUPPORT FOR DETECTIVE IRVING'S STATE OF MIND.**

The Government also moves *in limine* to preclude Detective Irving from introducing evidence in the form of witness testimony from other persons who had knowledge of *or* actually engaged in the same type of tax conduct for which Mr. Irving is being charged in this case. The Government asserts that such testimony "is completely irrelevant to this defendant and will not assist a jury in deciding whether he acted willfully" and that it is also "confusing." (Gov't Motion at p. 12-13.) We disagree with the Government's position in this regard.

The Government has made this argument in earlier pleadings in this case and its argument is based on a fundamental misconception of what constitutes relevant evidence. In this regard, the Government posits an impermissible notion that when the key issue is the defendant's "subjective" state of mind, the only evidence that is relevant to the defendant's state of mind is the testimony of the defendant as to what he was thinking. The Government simply fails to

understand that satisfy the Sixth Amendment right to defend oneself, the defendant must be permitted to present to the fact-finder not just his own testimony as to what he was thinking, but he must also be allowed to present evidence that would explain and corroborate how his thinking was formed and developed over time.  Evidence that goes to corroborate or explain what the defendant was told and why he came to his good-faith subjective belief (even if not objectively reasonable) is critical to the jury's consideration of the defendant's credibility regarding his good-faith belief and his therefore highly relevant to the key issue at this trial.

In fact, not only is the Government's narrow view of the evidence relevant to a defendant's state of mind counter-intuitive, it is contradicted by broader well-established principles of relevance.  "[A] defendant's good faith belief that he has no legal obligation to file [tax returns] and ***evidence showing the reasonableness of that state of mind is relevant***." *United States v. Willie*, 941 F.2d 1384, 1392 (10th Cir. 1991)(emphasis added).  With respect to tax cases, in particular, federal courts have noted that "[s]ince the critical element in a tax case is often the defendant's mental state, many courts have given the accused 'wide latitude' in the introduction of evidence which may tend to show a lack of willfulness or specific intent." *United States v. Lussier*, 929 F.2d 25, 31 (1st Cir. 1991); *see also*, *United States v. Sternstein*, 596 F.2d 528, 530 (2d Cir. 1979) ("Court have repeatedly observed that in [tax fraud cases] the 'accused as part of his defense is entitled to wide latitude in the introduction of evidence which tends to show lack of specific intent.'")

In its Motion, the Government completely misstates the law on the issue. In both *United States v. Middleton*, 246 F.3d 825, 838-39 (6th Cir. 2001), a case cited by the Government, and *United States v. Gaumer*, 972 F.2d 723, 725 (6th Cir. 1992), the Sixth Circuit recognized that when a defendant in a tax prosecution raises the issue of a good faith subjective belief that

negates criminal intent, the defendant must be afforded the opportunity to present extrinsic evidence that provides corroboration of who the defendant arrived at his good faith belief. In both those cases, the Court noted that the defendant "***must*** be afforded the opportunity to read for the jury relevant excepts of the materials on which he relied in forming his belief that he was not obligated to pay taxes. . ." *United States v. Middleton*, *supra*, 246 F.3d at 838-39. In *Middleton*, the trial court even permitted the defendant to introduce a videotape of another individual (a tax protester named Irvin Schiff) outlining his views on the nonpayment of income taxes. *Id*.("the district court allowed Middleton the opportunity to read into the record numerous excerpts, and to use them and a videotaped presentation outline his views to bolster this good-faith defense. . .") In *Gaumer*, *supra*, 972 F.2d at 724-25, the Sixth Circuit reversed the defendant's conviction for tax fraud because it found that the district court had erroneously excluded evidence offered by the defendant that would have negated the willfulness element of the offense. The court expressly acknowledged that the extrinsic evidence upon which the defendant relied to form his "good-faith belief" that he was not required to file income tax returns was relevant to corroborate his good faith belief. Similarly, in *United States v. Powell*, 955 F.2d 1206, 1214 (9th Cir. 1992), the Ninth Circuit noted:

> [O]rdinarily cannot exclude evidence relevant to the jury's determination of what a defendant thought the law was in § 7203 cases because willfulness is an element of the offense. In § 7203 prosecutions, statutes or case law upon which the defendant claims to have actually relied are admissible to disprove that element if the defendant lays a proper foundation which demonstrates such reliance."

There is absolutely no difference in admitting this type of extrinsic evidence, even though it is only documentary, that provides an explanation and corroboration of how the defendant's good-faith belief came about and was informed than there is in admitting testimonial evidence from third parties that serves the same person. Simply stated, instead of reading it, the defendant

heard it from other persons. Thus, instead of showing the jury through extrinsic evidence what he read, in this case, the defendant must be afforded the opportunity to show the jury what he was told, and not simply through the defendant's testimony alone, but through testimony from the third-parties that either told it to the defendant or heard the same thing the defendant heard.

Furthermore, the admission of testimonial evidence from the third-parties that Mr. Irving knew were relying on the same information that he was relying on in asserting his tax-exempt status could not possibly serve to confuse the jury. These witnesses will testify that they obtained the same information regarding not paying their taxes as Detective Irving obtained and that they obtained it from the same source, namely, Stephen Harris and Eugene Lonon, and that it formed a good-faith belief on their parts that they were not required to pay taxes. The testimony will be simple and straightforward and has no potential to confuse the jury. In this way, the testimonial evidence that Detective Irving proposes to introduce in this case is easily distinguishable from the voluminous "tax protest literature" that federal courts have excluded from admission in "tax protest" cases because of its potential to "confuse" the jury. *E.g., United States v. Hairston*, 819 F.2d 971, 973 (10th Cir. 1987; *United States v. Latham*, 754 F.2d 747, 751 (7th Cir. 1985); *United States v. Kraeger*, 711 F.2d 6, 7-8 (2d Cir. 1983).

      **6. THERE IS NO LEGAL BASIS TO PRECLUDE OPINION TESTIMONY ABOUT DETECTIVE'S IRVING LACK OF CRIMINAL INTENT.**

Finally, the Government seeks to preclude character witnesses from testifying that Detective Irving "would never intentionally commit any crime." (Gov't Motion at 13). The Government's alleged support for this final request is misguided and the Court should therefore deny the Government's request.

The Government first claims that Federal Rule of Evidence 704(b) precludes testimony from a character witness in regards to whether or not Detective Irving would intentionally

engage in acts he knew to be illegal. It is important to note at the onset that Detective Irving does not plan on presenting any expert witnesses to testify on this subject. Any proffered testimony would come from lay-persons who know Detective Irving and have a personal understanding of his character. Rule 701 "allows non-expert testimony in the form of an opinion or inference if that testimony is (1) rationally based on his perception, (2) helpful to achieving a clear understanding of the testimony or the determination of a fact issue, and (3) not based on scientific, technical, or other specialized knowledge." *United States v. Espino-Rangel*, 2007 WL 2636730 (5th Cir. 2007). Opinion testimony by a lay witness is not inadmissible "simply because it embraces an ultimate fact issue to be determined by the factfinder." *Id*; Fed. R. Evid. 704(a). Moreover, the clear language of Rule 704(b) indicates that it applies only to expert witnesses. Neither AUSAs Kirschner, Sines, and Herring, nor any other character witness Detective Irving might present, are expert witnesses; therefore, 704(b) is wholly inapplicable to the present case. *See id.* (holding that "FRE 704(b) does not permit an *expert* witness in a criminal case to testify whether a defendant did or did not have the mental state or condition constituting an element of the crime charged; but neither Agent Tabor nor Agent Shea was called as an expert witness, so FRE 704(b) has no application in the instant case").

The Government predicates its next argument on Federal Rule of Evidence 404, claiming that 404 prohibits a defendant from introducing evidence of his past good character to support a defense against the current offense. To the contrary, Rule 404 provides for precisely the opposite outcome. Specifically, 404(a) provides three exceptions to the general rule that character evidence is not allowed to prove conformity with past actions. Under the first exception, a criminal defendant *may* produce evidence of a pertinent trait of character in order to show conformity therewith. Fed. R. Evid. 404(a)(1). Thus, a criminal defendant may offer

16

evidence of a specific trait, such as honesty, trustworthiness, law "abidingness," etc., "as evidence of his innocence" of the current charges. *United States v. Lewis*, 482 F.2d 632, 637 (D.C. Cir. 1973).

The Government concedes that being a law-abiding person is "arguably a 'pertinent trait.'" (Brief, p. 15); *see also Michelson v. United States*, 335 U.S. 469 (1948); *United States v. Hewitt*, 634 F.2d 277, 279 (5th Cir. 1981) (holding that evidence as to law-abiding character "is always relevant and may be introduced whether or not the defendant takes the stand). Evidence of a defendant's law-abidingness is particularly relevant in cases like the current matter where an element of the crime requires that a defendant act "knowingly." *United States v. Angelini*, 678 F.2d 380, 381 (reversing and remanding where evidence of law-abidingness was excluded, finding that such evidence "would tend to make it less likely that [the defendant] would knowingly break the law" and that such exclusion not harmless).

Lastly, the Government mixes its Rule 404 argument with its final argument—that under Rule 405, a defendant may not "put on evidence of his character for [a specific trait] by reference to specific instances of conduct." (Gov't Motion at 15). Under 405, two types of character evidence are admissible: (1) Reputation or opinion evidence as to character or a particular character trait of a person under 405(a), and (2) Evidence as to specific instances of conduct that relate to an essential element of a charge, claim, or defense" under 405(b) or when used to rebut previously admitted general character evidence under 405(a). Thus, under the plain language of Rule 405(b), a defendant *may* put on character evidence by way of specific instances of conduct if the trait of character is an essential element of a charge, claim, or defense. As discussed above, an element of the charges brought against Detective Irving requires that he act knowingly. Thus, evidence as to his character for law-abidingness, which would negate the intent

17

requirement that he knowingly broke the law, relates directly to both the charges against Detective Irving and his applicable defense. *See Angelini*, 678 F.2d at 381. As such, *United States v. Hill*, 40 F.3d 164, 169 (7th Cir. 1994), cited as support by the Government (Gov't Motion at 15), is wholly irrelevant since, unlike the current case, *Hill* discusses a defendant who failed to show that the character trait he sought to introduce related to an essential element of a charge or defense.

The Government also relies upon *United States v. Camejo*, 929 F.2d 610 (11th Cir. 1991), which cites *Michelson v. United States*, as support for its conclusion that "acts of good conduct are not admissible to negate criminal intent." Although *Michelson*, decided in 1948, has not been explicitly overturned, any authority it offers on the issue of character evidence is clearly preempted by the advent of the Federal Rules of Evidence in 1975. Portions of the common law stated in *Michelson* were codified in the various rules of evidence relating to character, *see United States v. Holt*, 170 F.3d 698, 701 (7th Cir. 1999), but it is clear that the rules also expanded the common law on character evidence. For example, character witnesses are now allowed to offer opinion testimony in addition to general community reputation testimony. *See* Fed. R. Evid. 405(a). Moreover, regardless of whether such testimony was admissible under *Michelson*, Rule 405(b) unambiguously allows character witnesses to testify as to specific instances of conduct when those instances relate to a character trait that is an essential element of a charge, claim, or defense, as is the case here.

**CONCLUSION**

WHEREFORE, for these and such other reasons as the Court may deem relevant, the undersigned counsel respectfully requests that the Government's Consolidated Motion in Limine be denied.

Date:  October 11, 2007

Respectfully submitted,

SCHERTLER & ONORATO, LLP

_____/s/_____
David Schertler (DC Bar #367203)
David Dickieson (DC Bar #321778)
601 Pennsylvania Avenue, NW
North Building, 9th Floor
Washington, DC 20004
Telephone: (202) 628-4199
Facsimile: (202) 628-4177