**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |  |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | 07-CR-107 (PLF) |
| v. | ) | |
| | ) | Judge Paul L. Friedman |
| **MICHAEL C. IRVING** | ) | |
| | ) | |

**REPLY IN SUPPORT OF**
**DEFENDANT IRVING'S MOTION IN LIMINE TO PRECLUDE THE**
**GOVERNMENT FROM PRESENTING A PERSONAL EXPENDITURES CHART**

The Government alleges that for several years, from 2003 to 2005, Mr. Irving intentionally failed to file tax returns and did not pay federal and District income taxes during those years. Defendant believed in good faith that he was engaged in legitimate tax avoidance measures, measures that were in fact practiced by others within the Metropolitan Police Department (MPD) and accepted by the MPD payroll unit.

The Government seeks to introduce a Personal Expenditures Chart as evidence for the purpose of proving its theory that Defendant Irving was motivated by greed and therefore had the requisite criminal intent to evade taxes: "The Government intends to offer proof that he [Defendant Irving] was instead motivated by a desire to fund large amounts of personal expenditures during the years in question." (Government's Response to Defendant's Motion *in Limine* to Preclude the Government from Presenting a Personal Expenditures Chart, page one, filed on October 10, 2007).

The problem with this statement is that it does not address the underlying issue of Defendant's innocence or guilt. Rather, the statement simply lends itself to circular arguments: Because Defendant was greedy, he incurred a lot of personal expenditures – or - because Defendant had a lot of personal expenditures, he must have been greedy. Engaging in this kind of activity can only mislead or cause confusion of issues to the jury. More importantly, this will expose the Defendant to undue prejudice and not come any closer to proving the government's case for tax evasion.

Defendant's personal expenditures from 2003 to 2005 amounted to $454,147.00. Defendant Irving's legitimately earned income for the same time period was $471,026.59, a fact not disputed by the government. It is an amount that is **more** than the personal expenditures amount mentioned in the proposed Chart. The Defense cannot see how this Chart can be considered relevant to proving the Government's case for tax evasion. Evidence that is not relevant is inadmissible. (Rule 402, Federal Rules of Evidence).

The Government cites *United States v. Day*, 591 F. 2d 861, 874 (D.C. Cir. 1978) in support of its contention that motive is always relevant, thus: "Motive is a state of mind that is shown by proving the emotion that brings it into being '…as a circumstance showing the probability of appropriate ensuing action (and) it is always relevant… It has occasionally been said that the superfluousness of the evidence (of motive) and the possible unnecessary prejudice it might create against the defendant, require its exclusion; but this seems an unwise rule." The Court correctly noted at the most recent hearing that the *Day* case pre-dates the Federal Rules of Evidence and that the Government had cited no cases which apply the Federal Rules of Evidence to a situation similar to the instant tax case.

The Government does not mention that the discussion of motive by the Court of Appeals in the *Day* case is made in the context of its support of Rules 401 and 404(b) of the Federal Rules of Evidence, rules which emphasize why even some so-called relevant evidence should be denied admission during trial.

This Reply maintains that the Chart is irrelevant, confusing, and prejudicial and should not be presented during the trial. Assuming, however, that the Court finds for the prosecution and considers the Chart relevant, the Chart should still be rendered inadmissible evidence following Rules 403 and 404 (b) of the Rules of Evidence, on why certain relevant evidence should be excluded from trial. A brief discussion of *U.S. v. Day* will show that the evidence of "motive" is not given to the prosecution as *carte blanche* evidence to prove its case, which the prosecution improperly suggests in the instant case.

### A. The *Day* Case Provides No Specific Guidance for This Case.

*United States v. Day* is a murder case where appellees Lawrence T. Day and Eric J. Sheffey were charged with 17 counts involving four separate criminal enterprises, the main charges of which were: (1) interstate transportation of a stolen motor vehicle; (2) using an automobile without the owner's consent and committing armed robbery while armed with a dangerous weapon; (3) violation of the Federal Firearms Act by making four sawed-off shotguns; and (4) first degree murder of Gregory Williams while armed.

The Government appealed from orders of the District Court excluding evidence against defendants. The Court of Appeals affirmed in part and reversed in part the lower court's decision. It held that (1) evidence of one defendant's participation in prior crimes was inadmissible under the collateral estoppel doctrine (where the defendant had been acquitted of

those charges); (2) evidence that the other defendant had been involved in the thefts of an automobile and the shotguns was admissible in his subsequent trial for possession of sawed-off shotguns and homicide; and (3) evidence was inadmissible when based on the testimony of a witness that just before Williams was shot, he handed the witness a slip of paper on which was written Defendants' names and instructed the witness to call the police if he, Williams, did not return at a certain hour next day; however (4) the slip of paper itself was admissible to show association between the decedent and the defendants.

In the case against Day, the District Court had denied the government's motion to admit evidence of "other crimes" because the Court found as unsatisfactory the evidence presented to show that a relationship existed between the robbery and the ill-will between Day and Williams (the deceased). The Court of Appeals reversed this particular ruling, holding that "other crimes Evidence" is relevant to show motive for the killing of Williams.

The District Court and the Court of Appeals found these two rules of the <u>Federal Rules of Evidence</u> as pertinent:

Rule 401 – "'Relevant Evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."

Rule 404(b) – "Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident, provided that upon request, by the accused, the prosecution in a criminal case shall provide reasonable notice in advance of trial, or

4

during trial if the court excuses pretrial notice on good cause shown, of the general nature of any such evidence it intends to introduce at trial."

The prosecution relies on *U.S. v. Day* to show that motive is always relevant. However, *U.S. v. Day* is not applicable to the prosecution's argument that motive is always relevant, because some evidence of motive fail to meet the requirements of the Rules of Evidence. Both the District Court and Court of Appeals confined their comments on motive as referring to "other crimes" that had either been litigated or otherwise resolved against the defendants in that case. In the instant case, there are no "other crimes" that would justify extension of the *U.S. v. Day* ruling on motive. The government would seek to see "motive" in acts that any American would claim a right to, namely, spend legitimate earnings as he or she sees fit.

*U.S. v. Day* in fact serves to underscore the importance of admitting only certain kinds of evidence -- evidence "having any tendency to make the existence of any fact that is of consequence to the determination of the action more or less probable than it would be without the evidence."

### B. Logically, the Government Cannot Tie Expenses to Greed and Greed to Motive.

The Government asserts that the chart demonstrates that Detective Irving was motivated by greed in seeking an exemption from taxes and that this greed is demonstrated by a review of the Defendant's expenses during the relevant time period. The Government's faulty logic can be summarized as follows: (i) Detective Irving spent a lot of money; (ii) People who spend a lot of money are greedy; (iii) therefore, Detective Irving's greed caused him to want to spend even more money than he had; and (iv) thus, Detective Irving had the motive to evade his taxes to put more money in his pocket so he could spend more. The chart addresses only one of these three

5

points – Detective Irving spent a lot of money, yet the Government erroneously asserts that it proves motive and is therefore relevant.

Even if we accept the representations in the chart as proving that Detective Irving spent a lot of money, the second point in the Government's faulty logic doesn't follow. The mere expenditure of funds does not prove that one is greedy. The Defendant's Motion *in Limine* attached an exhibit showing that Detective Irving had to pay substantial debts of his elderly mother during this time period. Such expenses are the antithesis of greed. Does the Court want to engage in lengthy analysis during trial as to which expenses show greed and which expenses do not show greed?

To prove the third part of the Government's faulty logical construct, that Detective Irving spent more money than he had, the Government must do more than simply show what Detective Irving earned during the time period. It must show that Detective Irving did not have savings which he could tap into. The IRS is entirely familiar with the level of proof necessary for this sort of analysis, as they routinely do net worth analyses which address just this issue. The Government has failed to undertake such an analysis of Detective Irving's net worth. In fact, Detective Irving had substantial real estate assets and sold real estate during this time period. The funds from the sale are not included in the chart. No conclusions may be drawn from the chart or from the evidence in the possession of the Government as to whether Detective Irving actually was spending more money than he had.

The fourth and final aspect of the Government's logical construct is also flawed. The conclusion that Detective Irving evaded taxes to allow him to spend more money presents a chicken/egg issue: Did Detective Irving spend more money because he had more money to spend because he thought he was exempt from paying taxes, or did Detective Irving evade taxes so that

he could have more money to spend? The chart assumes only the second conclusion even though the first conclusion also flows from the analysis, and the first conclusion is consistent with the Detective's plea of not guilty. Again, the chart sheds no light on this issue as it leads to two completely conflicting conclusions.

Moreover, the motive of "greed" is ambiguous and does not shed any useful light on whether the Defendant had the requisite criminal intent to evade taxes. "Greed" can lead to legitimate goals – a higher paying job, an entrepreneurial venture, etc. - and its presence within all of us does not lead to any conclusion of criminal intent. Moreover, by the Government's argument and line of logic, the IRS could argue in every single tax case that greed was the motivating factor underlying the Taxpayer's decision to reduce his taxes, yet, the Government cannot point to a single case where a chart of the expenditures of the Taxpayer was held to be relevant and admissible.

"Greed," assuming that is the motivation of Defendant's spending - as outlined in the proposed Personal Expenditures Chart – will not prove tax evasion on Defendant's part because Defendant legitimately earned income over and above the amount mentioned in the Chart for the same time period. The presentation, therefore, to the jury of the Chart will not make the existence of "greed" for certain goods and services of consequence to the determination of tax evasion more or less probable than it would be without the Chart. It is merely an attempt to introduce irrelevant, prejudicial and confusing facts to the jury which have no bearing on criminal intent.

### C. The Chart Fails the Rule 403 Test of Unfair Prejudice, Confusion and Waste of Time.

Rule 403 of the Federal Rules of Evidence adds another obstacle to the Government's use of the Chart, assuming it is able to surmount the obstacle of relevance: "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or delay, waste of time, or needless presentation of cumulative evidence."

The Chart lumps certain luxury expenses together which they hope to highlight for the jury while disguising other expenses (payments for his elderly mother or his new baby) which run contrary to the Government's theme of greed. Defense counsel will be forced to attack the false innuendo of greed by parsing through the Government's method of grouping and labeling. All of this testimony to support the chart and to attack the chart will do nothing to advance the case, but will only serve to confuse the jury, waste time and unfairly paint the Defendant's character.

Using motive to explain that an act of omission is illegal necessitates a clear showing of a duty or a legal obligation. While tax evasion is illegal, tax avoidance is not, and in motive, the prosecution believes, lies the distinction. The prosecution has the burden of proving that Defendant Irving's tax avoidance measures were illegitimate. The Government cannot rely on the motive of greed to make its case – because the same motive of greed can lead a Taxpayer to avoid taxes as much as it can lead a Taxpayer to evade taxes. One path is legal and the other path is illegal. Evidence of greed does not advance any issue in this case. Allowing the Government to try to prove that the Taxpayer is greedy would be an improper use of evidence. It would clearly violate the strictures of Rule 403, particularly causing unfair prejudice to the

Defendant's right to be presumed innocent until proven otherwise, because the same element of greed can lead to legal as well as illegal action.

## CONCLUSION

For the foregoing reasons, we move that the Government's proposal to include the Personal Expenditure Chart during the trial be denied.

                                                     Respectfully submitted,

                                                  /s/ David H. Dickieson
                                         David Schertler (DC Bar #367203)
                                         David Dickieson (DC Bar #321778)
                                         Schertler & Onorato, LLP
                                         601 Pennsylvania Avenue, NW
                                         North Building, 9th Floor
                                         Washington, DC 20004
                                         Telephone: (202) 628-4199
                                         Facsimile: (202) 628-4177

                                         *Attorneys for Michael C. Irving*

Dated: January 24, 2008