UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                                    )
UNITED STATES OF AMERICA        )
                                                    )
                    v.                            )          Criminal No. 07-0107 (PLF)
                                                    )
MICHAEL C. IRVING,                  )
                                                    )
                    Defendant.               )
_____)

MEMORANDUM OPINION

            Under Section 3C1.1 of the United States Sentencing Guidelines, the base offense

level may be increased by two levels if the defendant "willfully obstructed or impeded, or

attempted to obstruct or impede, the administration of justice with respect to the investigation,

prosecution, or sentencing of the instant offense of conviction," and if the obstructive conduct

related to "the defendant's offense of conviction and any relevant conduct; or . . . a closely

related offense . . . ."  See U.S.S.G. § 3C1.1.  Committing perjury is an example of the type of

conduct to which this adjustment applies, so long as such perjury "pertains to conduct that forms

the basis of the offense of conviction."  U.S.S.G. § 3C1.1, app. note 4(b).  While it now is clear

that the prosecution must demonstrate the applicability of this provision only by a preponderance

of the evidence, the Sentencing Commission has emphasized that Section 3C1.1 is not intended

to punish a defendant for the exercise of his constitutional rights, including the right to testify on

his own behalf at trial, and it has cautioned that "not all inaccurate testimony or statements

necessarily reflect a willful attempt to obstruct justice."  U.S.S.G. § 3C1.1, app. note 2.

In order for this adjustment to apply, the Court must find that the defendant (1) gave false testimony, (2) concerning a material fact, (3) with the intent to deceive, rather than as a result of confusion, mistake or faulty memory.  See United States v. Dunnigan, 507 U.S. 87, 94 (1993); United States v. Smith, 374 F.3d 1240, 1245 (D.C. Cir. 2004).  As the Supreme Court has explained:

> [N]ot every accused who testifies at trial and is convicted will
> incur an enhanced sentence . . . for committing perjury. . . .
> [Rather,] if a defendant objects to a sentence enhancement
> resulting from her trial testimony, a district court must review the
> evidence and make independent findings necessary to establish a
> willful impediment to, or obstruction of, justice, or an attempt to
> do the same, under the perjury definition we have set out.

United States v. Dunnigan, 507 U.S. at 95.

The matter is complicated in this case because with respect to the two counts of the indictment on which the defendant was convicted (Counts 5 and 9), the jury necessarily found that the defendant had the requisite intent or else it could not have found him guilty.  This suggests that the jury rejected his good faith defense under Cheek v. United States, 498 U.S. 192 (1990).  The Court's own evaluation of the evidence also convinces the Court that the government proved the necessary intent with respect to Counts 5 and 9; if this were a bench trial, the Court would have rejected the Cheek defense with respect to these counts.  Furthermore, as indicated by its Memorandum Opinion and Order of January 13, 2009, the Court will consider both uncharged conduct and conduct on which the jury could not reach a verdict and therefore was hung in calculating the tax loss that establishes the base offense level.  This is because the Court has found by a preponderance of the evidence that the defendant had the requisite state of mind with respect to Counts 3, 4, 7 and 8, as well as with respect to the two acts of uncharged

conduct.[1]  The government argues that it follows ineluctably that the Court must find by a

preponderance of the evidence that the defendant perjured himself and thus must adjust the base

offense level upward by two levels under Section 3C1.1.  The Court does not agree.

        The government has identified in its sentencing memorandum seven excerpts

from the direct testimony of the defendant at trial as its exclusive basis for urging the Court to

find perjury and hence obstruction under Section 3C1.1.  See Government's Sentencing

Memorandum at 8-12.  The Court inquired at oral argument on November 6, 2008 whether these

were the only instances of alleged perjury on which the government relied in urging the upward

adjustment, and the government said they were.  See Transcript of Hearing at 62-63 (Nov. 6,

2008). The Court therefore must analyze separately each of the seven excerpts on which the

government relies and make particularized findings with respect to whether perjury has been

established.  See United States v. Dunnigan, 507 U.S. at 95-97.  In doing so, the Court has

attempted to put each of the defendant's allegedly perjurious statements in context by reading the

entirety of his testimony at trial, and particularly the questions and answers in the few pages

immediately preceding and immediately following the allegedly perjurious statements.

        Having engaged in that analysis, the Court cannot conclude by a preponderance of

the evidence that the second and third of the seven excerpts relied upon by the government, see

Transcript of Trial at page 178, lines 11-16 (May 12, 2008); id. at page 189, lines 16-17, meet the

definition of perjury discussed in Dunnigan.  The second and third excerpts relate to the

defendant's experience with having filed tax returns late in prior years and knowing of others

who had filed their taxes late, and his apparently true assertions that when he and others filed late

---

[1]      The Court will explain its reasoning orally at the sentencing on January 14, 2009.

in the past they faced (at most) late filing penalties and no criminal investigation or prosecution. See, e.g., Transcript of Trial at page 177, line 16 to page 178, line 6 (May 12, 2008); id. at page 189, lines 9-15; Transcript of Trial at 31, line 25 to page 36, line 4 (May 13, 2008 – afternoon session).  Thus, the Court cannot find by a preponderance of the evidence that these statements, in context, were false or intended to deceive.

With respect to the fourth and seventh allegedly perjurious statements in which the defendant responded to questions as to whether he believed he had "committed any crime" or was "guilty of any of the crimes with which you are charged," Transcript of Trial at page 195, lines 6-11 (May 12, 2008); id. at page 210, lines 3-5, the Court concludes that the defendant's views on the question of his legal guilt or innocence are immaterial.  The question of guilt is a question of law, and the defendant is not a lawyer.  To answer the questions put to him completely "truthfully" would require the defendant either to have an independent knowledge of the law or to have thoroughly considered and reviewed the Court's carefully constructed jury instructions in this case which had not even been finalized at the time the defendant testified.  In addition, the question of guilt is the ultimate question for the jury and not a question the answer to which is either objectively true or false.

That having been said, there still are three remaining excerpts on which the government relies for its request for a two-level upward adjustment under Section 3C1.1: the first, fifth and sixth of the government's seven excerpts.  They are as follows:

> Q (Mr. Schertler):  At any time did you think, or did you come to
> believe there was anything wrong with you declaring exempt?
>
> A (Defendant):  At no time from 2002 until 2006 did I ever think
> that anything was wrong with these forms right here of claiming
> exempt W-4 or D-4.

Transcript of Trial at page 133, lines 11-15 (May 12, 2008).

> Q (Mr. Schertler):  Did you ever believe that this was something
> that you could get in trouble for?
>
> A (Defendant):  No.
>
> Q (Mr. Schertler):  Did you ever believe that this was something
> for which you could be charged with crimes violating the federal
> and D.C. tax laws?
>
> A (Defendant):  Not at that time.
>
> Q (Mr. Schertler):  At any time prior to October 10, 2006, did you
> believe that you could get into trouble?  Did you believe that what
> you were doing was a crime?
>
> A (Defendant):  Not prior to October the 10th.

Id. at page 198, lines 3-13.

> Q (Mr. Schertler):  During this time period when you did not file
> your 2003, 2004 and 2005 tax returns, did you believe in your
> mind that you were violating any provisions of the tax laws of the
> United States of America?
>
> A (Defendant): Under no circumstances.

Id. at page 209, lines 2-6.

The Court concludes that the series of questions leading up to the defendant's

answers in the fifth and sixth excerpts were ambiguous. Given the context in which they were

asked and answered, it is not at all clear that Mr. Irving willfully intended to provide false

5

testimony.  The questions asked by counsel in the fifth excerpt were particularly opaque, and the

"time period" covered by the question in the sixth excerpt is unclear.  Thus, the Court cannot

conclude by a preponderance of the evidence that Mr. Irving's answers to these questions

amounted to perjury.  While the answer to the question in the first excerpt is more definitive and

encompasses all of the relevant years, the Court is reluctant to increase the defendant's potential

sentence for obstruction based on this one statement from nearly two days of testimony by the

defendant.  Cf. United States v. Safavian, 461 F. Supp. 2d 76, 88 (D.D.C. 2006) (the Court was

particularly reluctant to adjust upward under Section 3C1.1 in subjective areas involving intent

and willfulness).[2]  The Court therefore will not grant the government's request for a two-level

upward adjustment under Section 3C1.1.

        SO ORDERED.


        /s/_____
        PAUL L. FRIEDMAN
        United States District Judge

DATE:   January 14, 2009

---

[2]     While there is much in the defendant's testimony that the Court does not credit, the government has the burden of proof when seeking an upward adjustment and it has identified only the seven excerpts just discussed in seeking an upward adjustment under Section 3C1.1 of the Guidelines.